**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-02532-STV

HAUSCHILD GMBH & CO. KG, a German company,

Plaintiff,

v.

FLACKTEK, INC., a South Carolina corporation,
FLACKTEK MANUFACTURING, INC., a South
Carolina corporation, and FLACKTEK SPEEDMIXER, INC.,
a South Carolina corporation,

Defendants.

---

**PLAINTIFF HAUSCHILD GMBH & CO. KG'S RESPONSE IN OPPOSITION TO DEFENDANTS' AMENDED MOTION TO DISMISS FOR IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER TO THE DISTRICT OF SOUTH CAROLINA, MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT, AND MOTION TO STRIKE CLAIM FOR PUNITIVE DAMAGES**

---

**TABLE OF CONTENTS**


MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 2

A. Defendants' Manufacturing Operations Are Based In Colorado ........ 2

B. Defendants' Wrongful Conduct Primarily Occurred in Colorado ........ 3

C. Defendants Do Not Distinguish Among Themselves ........ 4

III. LEGAL ARGUMENT ........ 5

A. Venue Is Proper in the District of Colorado ........ 5

1. Because There Is Personal Jurisdiction Over Defendants, Venue Is Proper ........ 6

a. This Court Has Personal Jurisdiction Over Defendants ........ 6

(1) Defendants Are Subject to General Jurisdiction ........ 7

(2) Defendants Are Subject to Specific Jurisdiction ........ 8

b. Defendants Have Waived the Defense of Lack of Personal Jurisdiction, Thus Giving Rise to Venue Under 29 U.S.C. § 1391(b)(3) ........ 9

2. Venue Is Proper Because a Substantial Part of the Events Giving Rise to Hauschild's Claims Occurred in This Judicial District ........ 10

B. There Are No Grounds to Transfer This Case Under 28 U.S.C. § 1404(a) ........ 11

1. Hauschild's Choice of Forum Weighs Against Transfer ........ 12

2. Accessibility of Witnesses and Sources of Proof Weigh Against Transfer ........ 12

3. Location of Evidence Weighs Against Transfer ........ 14

4. Transfer of the Case Would Not Be in the Interest of Justice ........ 15

C. Defendants' Motion to Dismiss Under Rule 12(b)(6), or Alternatively for a More Definite Statement, Should Be Denied ........ 16

1. Hauschild Properly Alleged Its Claims Against Defendants ........ 17

2. Hauschild Properly Stated Its Claim for Violation of the CCPA ........ 18

D. Defendants' Motion to Strike Should Be Denied ........ 20

IV. CONCLUSION ........ 20

## TABLE OF AUTHORITIES

**Cases**

*Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987) .......... 7
*Astro-Med, Inc. v. Nihon Kohden Am.*, Inc., 591 F.3d 1 (1st Cir. 2009) .......... 5
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 16
*Berklee Coll. of Music, Inc. v. Music Indus. Educators, Inc.*, 733 F. Supp. 2d 204 (D. Mass. 2010) .......... 5
*Beverly Kuenzle, Wayne Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453 (10th Cir. 1996) .......... 7
*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) .......... 8
*Calder v. Jones*, 465 U.S. 783 (1984) .......... 7
*Carrado v. Daimler AG*, 2018 WL 4565562 (D. Colo. Sept. 24, 2018) .......... 17
*Cayman Explor. Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357 (10th Cir. 1989) .......... 17
*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509 (10th Cir. 1991) .......... 1, 11, 12
*Chubb v. Union Pac. R. Co.*, 908 F. Supp. 853 (D. Colo. 1995) .......... 16
*Consol. Props., Inc. v. Sherwin-Williams Co.*, 2018 WL 4610622 (D.V.I. 2018) .......... 10
*Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153 (10th Cir. 2010) .......... passim
*Erickson v. Pardus*, 551 U.S. 89 (2007) .......... 16
*ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542 (S.D.N.Y. 2008) .......... 14
*Galvin v. McCarthy*, 545 F. Supp. 2d 1176 (D. Colo. 2008) .......... 13, 15
*HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*, 805 F. Supp. 2d 1115 (D. Colo. 2011) .......... 19, 20
*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) .......... 7
*Holmes v. Polaris, Inc.*, 2020 WL 5107291 (E.D. Mich. Aug. 31, 2020) .......... 15
*Hughes v. Colorado Dep't of Corr.*, 594 F. Supp. 2d 1226 (D. Colo. 2009) .......... 18
*In re App. to Enforce Admin. Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413 (10th Cir. 1996) .......... 8, 9
*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) .......... 6
*Jordan–Arapahoe, LLP v. Bd. of Cnty. Comm'rs.*, 633 F.3d 1022 (10th Cir. 2011) .......... 16
*Kapoor v. Nat'l Rifle Ass'n of Am.*, 343 F. Supp. 3d 745 (N.D. Ill. 2018) .......... 13
*OpenLCR.com, Inc. v. Rates Tech., Inc.*, 112 F. Supp. 2d 1223 (D. Colo. 2000) .......... 6
*Peay v. Bellsouth Med. Assistance Plan*, 205 F.3d 1206 (10th Cir. 2000) .......... 6
*Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952) .......... 7
*Porsche Cars N. Am., Inc. v. Porsche.net*, 302 F.3d 248 (4th Cir. 2002) .......... 9
*RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556 (C.D. Cal. 2005) .......... 20
*Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242 (10th Cir. 2008) .......... 16
*Robles v. City of Chicago*, 354 F. Supp. 3d 873 (N.D. Ill. 2019) .......... 17

*Samson Cordgage Works v. Wellington Puritan Mills, Inc.*, 303 F.Supp. 155 (D.R.I. 1969)...... 14
*Sauer Brands, Inc. v. Duke Sandwich Prods., Inc.*, 2020 WL 90663
(W.D.N.C. Jan. 7, 2020)........................................................................................................ 10
*Scheidt v. Klein*, 956 F2d 963 (10th Cir. 1992) ........................................................ 5, 12, 13, 15
*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ..................................................................................... 17
*Shijin Vapor, LLC v. Bolt USA, LLC*, 2020 WL 6873420 (N.D. Cal. Nov. 23, 2020)................. 10
*Sierra Club v. Tri–State Generation and Transmission Ass'n, Inc.*,
173 F.R.D. 275 (D. Colo. 1997)............................................................................................. 20
*United States v. 51 Pieces of Real Prop. Roswell, N.M.*, 17 F.3d 1306
(10th Cir. 1994)........................................................................................................................ 9
*USLIFE Corp. v. Am. Republic Ins. Co.*, 218 U.S.P.Q. 298 (D.D.C. Aug. 19, 1982)................. 14
*William A. Smith Contracting Co. v. Travelers Indem. Co.*, 467 F.2d 662
(10th Cir. 1972)...................................................................................................................... 12
*Williams v. Life Sav. & Loan*, 802 F.2d 1200 (10th Cir. 1986) ..................................................... 9
*Wise v. Lindamood*, 89 F. Supp. 2d 1187 (D. Colo. 1999)................................................. 8, 9, 12

**Statutes**

28 U.S.C. § 1391(b) ........................................................................................................................ 5
28 U.S.C. § 1391(b)(2). .................................................................................................................. 6
28 U.S.C. § 1391(c)(2)............................................................................................................... 5, 6
28 U.S.C. § 1404.......................................................................................................................... 10
28 U.S.C. § 1404(a) ...................................................................................................................... 11
28 U.S.C. § 1406(a) ...................................................................................................................... 10
C.R.S. § 13–1–124(l) ..................................................................................................................... 6
Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105...................................... 1, 16, 18
Lanham Act, 15 U.S.C. § 1125...................................................................................................... 6

**Rules**

Fed. R. Civ. P. 12(b) .................................................................................................................... 10
Fed. R. Civ. P. 12(e) ..................................................................................................................... 20
Fed. R. Civ. P. 12(f)...................................................................................................................... 20
Fed. R. Civ. P. 12(h) ....................................................................................................................... 1
Fed. R. Civ. P. 8............................................................................................................................ 17
Fed. R. Civ. P. 9(b) ...................................................................................................................... 19
Fed. Ro. Civ. P. 12(b)(3)........................................................................................................... 9, 10
Fed.R.Civ.P. 12(h) ......................................................................................................................... 9

**Treatises**

6 McCarthy on Trademarks and Unfair Competition § 32:73 (5th ed.) ..................................... 14

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff Hauschild GmbH & Co. KG ("Hauschild") hereby responds to Defendants FlackTek, Inc., FlackTek Manufacturing, Inc. and FlackTek SpeedMixer, Inc.'s (collectively, "Defendants") Amended Motion to Dismiss for Improper Venue or, in the Alternative, to Transfer to the District of South Carolina and Motion to Dismiss for Failure to State a Claim or, in the Alternative, for a More Definite Statement, and Motion to Strike Claim for Punitive Damages.

## I. INTRODUCTION

In the Amended Motion to Dismiss or Transfer ("Motion"), Defendants fail to address two critical issues that are fatal to their argument that the Court should dismiss this case for improper venue. First, Defendants did not raise the defense of personal jurisdiction in the Motion, thus waiving any right to contest personal jurisdiction under Rule 12(h) of the Federal Rules of Civil Procedure and thereby making venue proper in this district. Second, Defendants unquestionably manufacture and sell their infringing machines in and from the State of Colorado. Because this Court has personal jurisdiction over Defendants and because a substantial part of the events giving rise to this matter occurred in Colorado, venue is proper in this district.

In addition, Defendants' request to transfer this case to South Carolina should be denied because Defendants fail to meet their burden of proving that the existing forum is inconvenient. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991). Indeed, the only party that arguably will benefit from transferring this case to South Carolina is FlackTek, Inc. and, more specifically, its principal, Dale Flackett ("Flackett"). To support their request for transfer, Defendants merely identify a few witnesses that they purportedly intend to call that reside in South Carolina, all of whom are under Defendants' control, and deliberately omit a key employee that resides in Colorado, while glossing over the fact that all of Defendants' design and manufacturing operations are in Colorado. Thus, the Motion to transfer should be denied.

Defendants' request for dismissal or a more definite statement also should be denied. Hauschild properly alleged all of its claims against Defendants, and provided Defendants with notice of the claims against each of them. Hauschild also properly pleaded its claim for violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105 ("CCPA"), including

allegations that Defendants engage in an unfair or deceptive trade practice and that their conduct has a "significant public impact."

Finally, if the Court is inclined to strike the request for punitive or exemplary damages as premature, Hauschild seeks leave to amend its First Amended Complaint ("FAC") accordingly.

## II. FACTUAL BACKGROUND

### A. Defendants' Manufacturing Operations Are Based In Colorado

In the Motion, Defendants omit any discussion of their current operations, which take place in Colorado. As prominently stated on the "Our Story" page of the FlackTek SpeedMixer website:

> ***We do all of our design and manufacturing work in the US, out of a state-of-the-art facility located next to the Rocky Mountains.*** There, we create the most advanced mixers on the market by leveraging our decades of mixing knowledge and using only the best nationally-sourced parts.

(Ex. A at 1, Emphasis added); Ex. B at 1 ("We proudly design, engineer, and manufacture our products at our world-class facility in the Rocky Mountains").) Thus, according to Defendants, all design and manufacturing operations are in Colorado, not in South Carolina.

To bolster their argument that the case purportedly should have been filed in South Carolina, Defendants rely heavily on the parties' dealings during their distributorship, but utterly ignore Defendants' current, infringing activities, which take place in Colorado and underlie the majority of Hauschild's claims in the FAC. (*See e.g.*, Doc. 12, ¶¶ 54-55, 57, 65-81.) In that regard, Defendants argue that witnesses supporting their defense reside in South Carolina (Doc. 18 at 8-9), and fail to identify any witnesses that (i) reside in Colorado that Defendants know Hauschild will designate because of their extensive involvement in the acts giving rise to Hauschild's claims or (ii) reside in places other than South Carolina.

Nevertheless, in a July 21, 2020 telephone call with Gerd Ulrich Schmidt ("Schmidt") of Hauschild, Flackett, the "owner and founder" of Defendants (Doc. 18-1, ¶ 1), admitted that an employee, Matthew Gross, "runs the business now." (Schmidt Decl. ¶ 5.) Matthew Gross ("Gross") lives in Boulder, Colorado, not in South Carolina, and will be a key witness in the case. (Schmidt Decl. ¶ 6; Ex. C.) Notably, Defendants did not list Gross as a witness in their Motion.

Indeed, there are several members of "The Team," as identified on Defendants' website,

that do *not* reside in South Carolina and who likely will be witnesses in this action due to their involvement in marketing, sales, product development, engineering and manufacturing. Such witnesses include, for example, Shane Green, a sales representative that resides in Cardiff-by-the-Sea, California and has worked for FlackTek, Inc. since approximately 2007, Drew Tyger, a sales representative that resides in Montana. (Schmidt Decl. ¶¶ 7-9) and Ted Reynolds, a FlackTek technical consulting employee that resides in Denver, Colorado, who claims on a website displaying photographs of Hauschild's machines that "SpeedMixer is the originator of the Dual Asymmetric Centrifuge (DAC) technology." (Ex. D at 1; Schmidt Decl. ¶ 10.) With respect to witnesses from South Carolina, at this point in time, Hauschild only anticipates calling Flackett and Brad Cisson, a former FlackTek sales technician. Hauschild's other witnesses reside in Germany or other parts of the world, including the United Kingdom, Europe and/or Asia. (Schmidt Decl. ¶ 12.)

### B. Defendants' Wrongful Conduct Primarily Occurred in Colorado

Hauschild's claims against Defendants arise out of Defendants' intentional, willful and unlawful use of Hauschild's trademarks and trade secrets to manufacture and sell competing industrial mixers in the same markets as Hauschild. And, as noted above, Defendants conduct all manufacturing operations in Colorado. Although Flackett's declaration seeks to downplay the Colorado manufacturing facility by claiming that FlackTek Manufacturing "had no role in the development, modification, labeling or sale to end-user of the machines at issue in Plaintiff's First Amended Complaint," that is factually incorrect. (*See* Doc. 18-1, ¶ 2.) The machines at issue in Hauschild's FAC include not only modified Hauschild machines—but also FlackTek machines manufactured in Colorado that infringe Hauschild's trademarks and trade dress, and include integral, proprietary parts that were removed from Hauschild's machines without Hauschild's approval, knowledge or consent. (Doc. 12, ¶¶ 75-80.) Moreover, although FlackTek, Inc. maintains an office condominium in South Carolina, Defendants do not have a manufacturing facility there. (Schmidt Decl. ¶ 13.)

In addition, as alleged in the FAC, in October 2018, Flackett formed FlackTek Manufacturing, Inc. as the manufacturing arm of Defendants' "FlackTek SpeedMixer" operations.

(Doc. 12, ¶ 43.) Such operations include the development of competing industrial mixers, modifications to Hauschild's SPEEDMIXER products, attempts to reverse engineer Hauschild's technology and the sale and marketing of "FlackTek SpeedMixers." (Doc. 12, ¶¶ 51, 55, 120.) All such activities take place in Colorado under Gross' direction control and supervision. (Schmidt Decl. ¶ 5.) Also, "FlackTek SpeedMixer" machines are manufactured in, and presumably shipped from, Colorado, not South Carolina. (Exs. A & B.) Notably, although Flackett's declaration avers that certain administrative functions are conducted in South Carolina, noticeably missing from the declaration are any averments that design, manufacturing, marketing or sales of "FlackTek SpeedMixer" machines are conducted in South Carolina. That is because they are not.

Further, although Flackett's declaration avers that some documentary evidence is located in South Carolina, the FlackTek machines and manufacturing facility, which Hauschild intends to inspect in this case, are located in Colorado.

### C. <u>Defendants Do Not Distinguish Among Themselves</u>

There is no clear delineation among Defendants FlackTek, Inc., FlackTek Manufacturing, Inc. and FlackTek SpeedMixer, Inc. With respect to Defendants' marketing, the <speedmixer.com> website[1] includes all three Defendants and makes little to no effort to differentiate them. For example, the "Our Story" page collectively refers to "FlackTek," stating that they are headquartered in Landrum, South Carolina, and that "***We*** do all of our design and manufacturing work . . . next to the Rocky Mountains." (Ex. A at 1) (emphasis added). On the "Contact Us" page, Defendants represent that the "FlackTek SpeedMixer" "Global Headquarters" are located in South Carolina, without distinguishing between FlackTek, Inc. and FlackTek SpeedMixer, Inc. (Ex. E at 1.) Defendants also represent that FlackTek Manufacturing, Inc. is located in Louisville, Colorado. (*Id.*) Thus, throughout the website, Defendants refer to themselves collectively under the dba "FlackTek" or "FlackTek SpeedMixer." (*See* Exs. A & B.)

Further, the website's Terms of Use plainly state that the website is owned and operated by FlackTek, Inc.:

---

[1] The domain name <flacktek.com> points to, and therefore redirects visitors, to <u>https://speedmixer.com/</u>.

> FlackTek Inc. ("we," "us," or "our") is proud to offer https://speedmixer.com (the "Website"), to provide users in the United States ("you," "your") access to information about our SpeedMixer™ products and services (the "Services").

(Ex. F at 1.) FlackTek, Inc. also filed applications with the USPTO for the Infringing FlackTek Marks and the Infringing DAC Marks, as alleged (and defined) in the FAC (Doc. 12, ¶¶ 38-42), however, all Defendants use the infringing marks in connection with the marketing and sale of "FlackTek SpeedMixer" machines in direct competition with Hauschild.

## III. <u>LEGAL ARGUMENT</u>

### A. <u>Venue Is Proper in the District of Colorado</u>

A plaintiff's choice of forum is given considerable weight and should rarely be disturbed unless the balance of factors is strongly in favor of the movant. *Scheidt v. Klein*, 956 F2d 963, 965 (10th Cir. 1992). Here, Plaintiff's choice of forum is proper and should not be disturbed.

According to 28 U.S.C. § 1391(b), a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located" or "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated." *Id.* Additionally, for purposes of venue, "an entity with the capacity to sue and be sued in its common name under applicable law . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c)(2); *Berklee Coll. of Music, Inc. v. Music Indus. Educators, Inc.*, 733 F. Supp. 2d 204, 211 (D. Mass. 2010) (holding that because court holds specific personal jurisdiction over corporate defendant, venue is also proper as to that defendant). Further, "venue can be appropriate in more than one district ... [and] permits venue in multiple judicial districts as long as a substantial part of the underlying events took place in those districts." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 (10th Cir. 2010) (citation omitted). Thus, "venue is not limited to the district with the *most* substantial events or omissions." *Id.* at 1165 (emphasis in original); *see also Astro-Med, Inc. v. Nihon Kohden Am.*, Inc., 591 F.3d 1, 12 (1st Cir. 2009) ("[W]e are not required to determine the best venue, merely a proper venue.")

Here, there are at least two reasons why this Court is the proper venue for this action. First,

this Court has personal jurisdiction over Defendants. *See* 28 U.S.C. § 1391(b)(1) & (c)(2). Second, a substantial part of the events giving rise to Hauschild's claims occurred in this judicial district. *See* 28 U.S.C. § 1391(b)(2).

1. Because There Is Personal Jurisdiction Over Defendants, Venue Is Proper

As noted above, venue is proper in any judicial district in which a defendant resides, and a corporate defendant resides in any judicial district in which it is subject to personal jurisdiction. 28 U.S.C. § 1391(b)(1) & (c)(2). Here, because Defendants are subject to personal jurisdiction in the State of Colorado and they have not challenged this Court's exercise of personal jurisdiction over them, the District of Colorado is a proper venue for this action.

**a. This Court Has Personal Jurisdiction Over Defendants**

When a corporation or business entity is subject to personal jurisdiction, it is considered to be a resident of that jurisdiction for purposes of venue. *See* 28 U.S.C. § 1391(c)(2). Although none of the Defendants are incorporated in Colorado, all parties either maintain their principal place of business in Colorado (*e.g.* FlackTek Manufacturing, Inc.) or conduct business activities in Colorado (*e.g.* FlackTek, Inc. and FlackTek SpeedMixer, Inc.) and thus are subject to the personal jurisdiction of this Court.

Personal jurisdiction may be exercised over a nonresident defendant in a federal question case if: (1) the defendant is amenable to service of process under the applicable statute or some other means; and (2) the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Peay v. Bellsouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000). Because the Lanham Act does not specifically provide for the service of process in a civil action, the issue of service is governed by Colorado state law. Colorado's long–Arm statute, C.R.S. § 13–1–124(l)(a) and (b), codifies the "minimum contacts" test of *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and extends the courts' jurisdiction to the maximum extent consistent with the Due Process clause; thus, it is only necessary for this Court to decide if jurisdiction over Defendants by a Colorado district court would be constitutionally permissible. *OpenLCR.com, Inc. v. Rates Tech., Inc.*, 112 F. Supp. 2d 1223, 1227 (D. Colo. 2000). The second step, the due process inquiry, requires the satisfaction of two conditions: (1) the nonresident

defendant must have ***purposefully availed*** himself of the benefits and protections of the forum state by establishing ***minimum contacts*** with the forum state; and (2) the exercise of jurisdiction over the nonresident defendant must not offend traditional notions of fair play and substantial justice. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987).

The first prong of the due process inquiry, the existence of minimum contacts with the forum state, is divided into two types of personal jurisdiction, general and specific. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984).

General jurisdiction will be invoked, even if the nonresident defendant's contacts with the forum state are not directly related to the plaintiff's claims, if the defendant's contacts with the forum state are substantial, continuous and systematic. *Helicopteros*, 466 U.S. at 414 n. 9. Specific jurisdiction is appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the plaintiff's claims. *Id.* at 414, n. 8.

As discussed below, this Court has both general and specific jurisdiction over Defendants.

(1) <u>Defendants Are Subject to General Jurisdiction</u>

A court will exercise general jurisdiction over a nonresident defendant if its contacts with the forum state are "substantial . . . continuous and systematic." *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 447-49 (1952); *Calder v. Jones*, 465 U.S. 783, 786-87 (1984). In evaluating contacts with the forum, courts have considered non-exclusive factors, including: (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation. *Beverly Kuenzle, Wayne Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 457 (10th Cir. 1996). In applying these factors, there is no question that Defendants are subject to the general jurisdiction of this Court.

<u>FlackTek Manufacturing</u>: FlackTek Manufacturing has a business address and a manufacturing facility in Colorado. It has employees that regularly conduct business in Colorado. (*See, e.g.* Exs. C & G.) It holds itself out to the public as doing business in Colorado. (Exs. A-C.)

Further, Flackett admits that its principal place of business is in Colorado. (Doc. 18-1, ¶ 2.)

FlackTek, Inc.: Although FlackTek, Inc. claims to maintain its headquarters in South Carolina, there is no question that FlackTek, Inc. holds itself out to the public as conducting ongoing business operations in Colorado. On the website owned and operated by FlackTek, Inc., it unequivocally tells the public that "***We* *do* *all*** of our design and manufacturing work" in a facility "next to the Rocky Mountains," hence, in Colorado. (Ex. A) (emphasis added).

FlackTek SpeedMixer, Inc.: It is unclear the exact role played by this defendant with respect to Defendants' manufacturing, advertising and sale of the infringing products bearing its name. Indeed, its name, "FlackTek SpeedMixer," is featured prominently on Defendants' collective website, which holds itself out to the public as conducting design and manufacturing work in Colorado. It also bears the same infringing name as the products made by FlackTek Manufacturing, Inc. and sold by FlackTek, Inc. Flackett does not address this defendant in his declaration at all, except to state that its principal place of business is located in South Carolina. (Doc. 18-1, ¶ 1.) However, at least one employee, Gross—who resides in Colorado—claims to be employed by FlackTek SpeedMixer, Inc. (Ex. H.)

(2) Defendants Are Subject to Specific Jurisdiction

Specific jurisdiction permits the exercise of personal jurisdiction over a nonresident defendant if the "defendant has purposefully directed its activities toward the forum jurisdiction and where the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum." *In re App. to Enforce Admin. Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413, 418 (10th Cir. 1996). "[W]here the defendant 'deliberately' has engaged in significant activities within a State, [] or has created 'continuing obligations' between himself and residents of the forum, [] he manifestly has availed himself of the privilege of conducting business there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985). Purposeful availment ensures a defendant will not be haled into court for "random, fortuitous, or attenuated contacts" but that the defendant deliberately has engaged in significant activities within the state. *Id.* "Even a single purposeful contact may be sufficient ... when the underlying proceeding is directly related to that contact." *Wise v. Lindamood*, 89 F. Supp. 2d 1187, 1190 (D. Colo. 1999).

There is no question that Defendants have availed themselves of the laws of and directed their activities at Colorado in connection with the wrongful conduct alleged in the FAC. FlackTek, Inc. and FlackTek SpeedMixer, Inc. market, advertise and sell infringing products that FlackTek Manufacturing, Inc. makes under the infringing trademarks in the forum state. FlackTek, Inc. owns and operates a website on behalf of all Defendants, in which they proudly advertise the sale of products designed and manufactured in Colorado. FlackTek SpeedMixer, Inc. has at least one employee in Colorado—Gross—who, according to Flackett, "runs the business." (Schmidt Decl. ¶ 5.) Thus, the purposeful availment prong of the minimum contacts test is easily met.

Finally, the exercise of specific jurisdiction over Defendants is reasonable, just and satisfies traditional notions of fair play. *Knowles*, 87 F.3d at 418. The burden on Defendants is minimal: Each Defendant has employees in Colorado; the facility in which the products at issue in this action are manufactured is located in Colorado; Defendants advertise that they have operations in Colorado; key evidence is fabricated, labeled and shipped out of Colorado (the infringing "FlackTek SpeedMixer" machines); and key witnesses are located in Colorado. *See Wise*, 89 F. Supp. 2d at 1190 (listing factors to be considered). Accordingly, this Court may properly exercise specific personal jurisdiction over Defendants, making venue proper in this district.

**b. Defendants Have Waived the Defense of Lack of Personal Jurisdiction, Thus Giving Rise to Venue Under 29 U.S.C. § 1391(b)(3)**

In their Motion, Defendants did not object to this Court's exercise of personal jurisdiction over them. As such, Defendants waived any challenge to this Court's personal jurisdiction. Indeed, by filing their venue challenge under Rule 12(b)(3), and omitting a personal jurisdiction challenge under Rule 12(b)(2), Defendants waived any right to do so. Fed. R .Civ .P. 12(h); *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986) (defect in district court's jurisdiction is waived unless timely raised in pre-answer motion or in answer); *United States v. 51 Pieces of Real Prop. Roswell, N.M.*, 17 F.3d 1306, 1314 (10th Cir. 1994) (failure to object to personal jurisdiction in "first defensive move" constitutes waiver); *Porsche Cars N. Am., Inc. v. Porsche.net*, 302 F.3d 248, 256 (4th Cir. 2002) ("personal jurisdiction is indubitably waived absent timely objection").

In an analogous case, *Consol. Props., Inc. v. Sherwin-Williams Co.*, 2018 WL 4610622

(D.V.I. 2018), the defendant filed a motion to dismiss for improper venue under Rule 12(b)(3) or alternatively to transfer under 28 U.S.C. § 1406(a)[2] or § 1404, however, the defendant did not challenge personal jurisdiction. The court noted that by failing to object to the court's personal jurisdiction in its Rule 12 motion to dismiss, the defendant waived any challenge to the court's personal jurisdiction. Further, the court noted, "[w]here, as here, a defendant waives a challenge to personal jurisdiction, that defendant is subject to the court's [sic] personal jurisdiction," and it is deemed to reside in that district. *Id.* Accordingly, venue was proper. *Id.* at *3.

Likewise, here, Defendants did not raise the defense of personal jurisdiction in their Rule 12(b) motion, thus waiving that defense. Therefore, Defendants are subject to this Court's personal jurisdiction and they are deemed to reside in this district. *Sauer Brands, Inc. v. Duke Sandwich Prods., Inc.*, 2020 WL 90663, at *1 (W.D.N.C. Jan. 7, 2020) (defendants waived objection to personal jurisdiction by failing to include it in Rule 12(b) motion). Accordingly, venue is proper in this judicial district and the Motion to Dismiss should be denied.

2. Venue Is Proper Because a Substantial Part of the Events Giving Rise to Hauschild's Claims Occurred in This Judicial District

Venue is also proper in this district because a substantial part of the events giving rise to Plaintiff's claims occurred here. In a similar case, *Sauer Brands, Inc. v. Duke Sandwich Prods., Inc.*, 2020 WL 90663, at *1 (W.D.N.C. Jan. 7, 2020), the defendants filed a motion to dismiss or transfer a case arising under the Lanham Act, arguing that a substantial part of the events giving rise to the claims did not occur in the judicial district. The district court denied the motion to transfer, holding that "venue generally will lie where the events or omissions that would give rise to a potential claim for trademark infringement occur." *Id.* at *2. The court noted that venue in a trademark infringement action will be appropriate where there are sales or advertising of the infringing goods or services. Indeed, "venue is appropriate where plaintiff sold or advertised goods bearing the accused mark, and where plaintiff placed the accused mark on the goods or prepared advertising bearing the mark." *Shijin Vapor, LLC v. Bolt USA, LLC*, 2020 WL 6873420, at *4 (N.D. Cal. Nov. 23, 2020).

[2] Defendants, here, did not file a motion to dismiss or transfer under 28 U.S.C. § 1406.

Nearly all of Hauschild's claims arise out of Defendants' current, wrongful activities, namely, the advertising, manufacture and sale of infringing machines.[3] A cursory review of the FAC confirms that Defendants simply are incorrect in their argument that "Plaintiff asserts numerous federal and state law claims arising out of the February 1, 2008 Dealership Agreement with FTI." (Doc. 18 at 4.) For example, the First Claim for Trademark Infringement alleges that "Defendants have been using, without Plaintiff's permission or authorization, the Infringing FlackTek Marks, the Infringing DAC Marks and the Infringing Domain Name in connection with their sale and advertising of industrial mixers and related products." (Doc. 12, ¶ 90.) The Fifth Claim for Passing Off alleges that Defendants are selling "FlackTek SpeedMixer" machines at <speedmixer.com> (i.e. machines made by Defendants in Colorado), using (i) Plaintiff's "Hauschild" name; (ii) other identifying information, including but not limited to descriptions of the machines as "engineered and hand built in Germany;" (iii) Plaintiff's marks, including the SPEEDMIXER and SPEEDMIXER DAC mark; and (iv) photographs of Plaintiff's SPEEDMIXER machines. (Doc. 12, ¶¶ 113-14.) The Sixth Claim for Reverse Passing Off alleges, in part, that Defendants are manufacturing and selling machines containing Hauschild parts. (*Id.* ¶¶ 120-23.) There simply is no question that the majority of the FAC is based on Defendants' current, wrongful activities, all of which occur in Colorado.

**B. <u>There Are No Grounds to Transfer This Case Under 28 U.S.C. § 1404(a)</u>**

A party moving to transfer a case bears the burden of showing that the existing forum is inconvenient. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991). A district court may transfer an action "to any other district or division where it might have been brought or to any district or division to which all parties have consented" based on "the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). In its analysis, a court will consider, among other factors: the plaintiff's choice of forum, the

[3] The FAC includes fourteen claims, out of which only four (Third Claim—false advertising; Tenth Claim—fraud against FlackTek, Inc.; Eleventh Claim—Rescission against FlackTek, Inc.; Twelfth Claim—Breach of Contract against FlackTek, Inc.) do not directly involve the manufacture, advertising and sale of infringing machines manufactured in Colorado. However, the Second Claim—False Advertising, may involve the sale of machines originating in Colorado, which Hauschild will ascertain during discovery.

accessibility of witnesses and other sources of proof, questions as to the enforceability of a judgment if one is obtained, relative advantages and obstacles to a fair trial, difficulties that may arise from congested dockets, whether there are conflicts of laws, the advantage of having a local court determine questions of local law, "and, all other considerations of a practical nature that make a trial easy, expeditious and economical." *Chrysler Credit Corp.*, 928 F.2d at 1516. If the balance of considerations is not strongly in favor of Defendants, the plaintiff's choice of forum should not be disturbed. *Wise,* 89 F. Supp. 2d at 1198, *citing William A. Smith Contracting Co. v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir. 1972) ("Unless the balance is ***strongly*** in favor of the movant, the plaintiff's choice of forum should rarely be disturbed") (emphasis added).

1. Hauschild's Choice of Forum Weighs Against Transfer

As noted above, "[t]he plaintiff's choice of forum weighs against transfer" and "unless the balance is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed." *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992). To obtain transfer, Defendants must demonstrate that Colorado is ***inconvenient***, not merely that South Carolina is ***preferable***. Defendants fail to meet their burden. Neither the Motion nor Flackett's declaration explain how or why Colorado is inconvenient. Rather, Defendants merely identify a few witnesses that Defendants purportedly intend to call that reside in South Carolina. Moreover, the facts giving rise to the lawsuit plainly have a material relationship and significant connection to Colorado, as explained in Sections II.A & B, *supra*. *See Employers Mut. Cas. Co.*, 618 F.3d at 1168. Thus, this factor weighs in favor of Hauschild's choice of forum.

2. Accessibility of Witnesses and Sources of Proof Weigh Against Transfer

To demonstrate inconvenience, Defendants must "(1) identify the witnesses and their locations; (2) indicate the quality or materiality of their testimony; and (3) show that any such witnesses were unwilling to come to trial, that deposition testimony would be unsatisfactory or that the use of compulsory process would be necessary." *Employers Mut. Cas. Co.*, 618 F.3d at 1169 (internal citations and brackets omitted). To support their position that the case should be transferred to South Carolina, Defendants identify three current FlackTek employees, one former FlackTek employee and two CPAs, all of whom reside in South Carolina. Defendants do not,

however, explain the materiality of the third-party witness testimony (the CPAs) and do not show that any witnesses are unwilling to come to trial in Colorado, that deposition testimony would be unsatisfactory or that the use of compulsory process would be necessary.

In *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992), the defendant sought to transfer the case to Florida under section 1404(a), identifying eight Florida witnesses that he expected to call in the case. The Tenth Circuit affirmed the district court's denial of the motion to transfer, holding that the defendant's "meager showing failed to demonstrate the requisite inconvenience to his witnesses." *Id.* Likewise, here, Defendants fail to prove that any material witnesses are unwilling to come to trial in Colorado—particularly as three of the six listed witnesses are current FlackTek employees and all of the listed witnesses (with the possible exception of the former FlackTek employee) are within the control of Defendants. *See Kapoor v. Nat'l Rifle Ass'n of Am.*, 343 F. Supp. 3d 745, 752 (N.D. Ill. 2018) ("[T]he convenience of witnesses employed by a party is entitled to little weight . . ."). Further, it is hard to believe that the two listed tax preparers are material witnesses in this trademark infringement case; nor do Defendants explain the materiality of their testimony, other than to state that they prepared tax returns during the relevant time period. And, the materiality of witnesses, not merely the number of prospective witnesses, will determine the extent to which their convenience will be weighed. *Employers Mut. Cas. Co.*, 618 F.3d at 1169; *see also Galvin v. McCarthy*, 545 F. Supp. 2d 1176, 1182–83 (D. Colo. 2008) (denying motion to transfer case to Texas even though twelve out of fourteen witnesses lived in Texas because "the vast majority of the Texas witnesses are Defendant's executives and employees. Thus, although these individuals are outside the reach of the compulsory process of this court, they are not without incentive to attend hearings and a trial in Colorado.")

Notably absent from Defendants' Motion are the names of any witnesses that will offer testimony regarding the new, infringing machines built in Colorado,[4] the certification of the machines, the sourcing of parts, the use of Hauschild parts in those machines, persons with knowledge about the advertising, alleged product demonstrations or other information regarding

[4] Flackett's declaration misleadingly refers only to Hauschild machines that were modified by FlackTek allegedly in South Carolina rather than the new, "FlackTek SpeedMixer" machines built in Colorado. (Doc. 18-1, ¶ 4(c).)

Defendants' admission that "we do all of our design and manufacturing work in the US, out of a state-of-the-art facility located next to the Rocky Mountains." (Ex. A.) It is inconceivable that Defendants do not have a single witness in this case that resides in Colorado, particularly in light of Flackett's statement to Schmidt that Gross runs the business now. (Schmidt Decl. ¶ 5.)

Moreover, in a trademark infringement case where likelihood of confusion is an issue, courts have held that witnesses from the consuming public are "key witnesses" and "the location of the headquarters of defendant is not of prime importance." 6 McCarthy on Trademarks and Unfair Competition § 32:73 (5th ed.) Thus, "the location of a defendant's headquarters does not generally, standing alone, justify a transfer there." *USLIFE Corp. v. Am. Republic Ins. Co.*, 218 U.S.P.Q. 298 (D.D.C. Aug. 19, 1982) (*citing Samson Cordgage Works v. Wellington Puritan Mills, Inc.*, 303 F.Supp. 155 (D.R.I. 1969) (transfer to location of defendant's office denied because defendant's business was national in scope and no benefits would result from a transfer).

Further, "in an infringement action, the most critical witnesses may be those officers and employees who were involved in the design, production, and sale of the [allegedly infringing] products." *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 548 (S.D.N.Y. 2008). Here, such witnesses include those involved in the "design and manufacturing work" performed in Colorado, such as Gross, who directs operations at the manufacturing facility. (Schmidt Decl. ¶ 5.) Other witnesses involved in the technical development of FlackTek's products do not reside in Colorado or South Carolina, such as David Hsieh, who is located in China and Andrew Larsen, a technical specialist that resides in Phoenix, Arizona. (*Id.* ¶ 12.) Accordingly, Defendants have not met their burden of proving South Carolina is a more convenient forum than Colorado.

3. <u>Location of Evidence Weighs Against Transfer</u>

Hauschild intends to demand inspection of the "FlackTek SpeedMixer" machines and the manufacturing facility in Colorado. (Schmidt Decl. ¶ 14.) Other than identifying documents relating to performance of the Dealership Agreement, which Defendants claim are in South Carolina, Defendants do not identify any other evidence in South Carolina. Nor have Defendants claimed to have a manufacturing facility in South Carolina; that is because they do not. (*Id.* ¶ 13.)

Defendants also have not submitted any evidence to support their argument that the cost of

making necessary proof supports transfer. (*See* Doc. 18 at 10.) Other than arguing that most of the witnesses reside in South Carolina, which is false, Defendants merely contend that documents relating to performance of the Dealership Agreement are located in South Carolina and that "Defendants' offices" are located in South Carolina. Nevertheless, "[t]he location of documents and sources of proof have become a less significant factor in the § 1404(a) transfer analysis because of technological advances and availability of documents in electronic form." *Holmes v. Polaris, Inc.*, 2020 WL 5107291, at *3 (E.D. Mich. Aug. 31, 2020). In *Galvin v. McCarthy*, 545 F. Supp. 2d 1176 (D. Colo. 2008), the court denied the defendant's request to transfer the case to Texas, noting, among other things, the defendant failed to explain why the transmittal of records, either in paper or electronic form, to Colorado is more inconvenient than transferring the information within Texas. The court observed, "[e]ither way, the information and documentation will need to be copied or scanned and delivered to counsel for Plaintiff. Thus, Spirit has failed to show that the location of the evidence weighs in favor of transfer." *Id.* at 1183. Similarly, Defendants have to copy or scan documents and deliver them to counsel in paper or electronic form, and Defendants have not shown that the location of documents in South Carolina makes Colorado a less convenient forum. It is hard to believe there are no documents at Defendants' Colorado facility, where the "FlackTek SpeedMixer" machines are designed and manufactured and where Gross "runs the business." Given the issues in this case, Plaintiff will demand that Defendants produce documents relating to the design, manufacture and shipment of such machines.

4. <u>Transfer of the Case Would Not Be in the Interest of Justice</u>

Defendants have not shown that transfer of this case would be in the interest of justice. Contrary to Defendants' attempt to manufacture a justification for transfer, none exists. According to statistics offered in Defendants' Motion, the average time from filing to disposition is shorter in the District of Colorado than in the District of South Carolina. (Doc. 18 at 12.)

There also is no issue regarding potential conflicts of law. First, this is not a diversity case, it is one arising under federal question jurisdiction with pendent state claims. And, "[t]his factor receives less weight when the case involves relative[ly] simpl[e] legal issues." *Employers Mut. Cas. Co.*, 618 F.3d at 1169 (*citing Scheidt*, 956 F.2d at 966 (noting that "the applicability of Florida

law is not a significant concern in light of the relative simplicity of the legal issues involved in the common law fraud and breach of contract claims").) Moreover, the FAC includes a claim for violation of the CCPA, which this Court has a local interest in deciding. *See* 618 F.3d at 1170.

Further, the statistics presented by Defendants regarding the dockets of Colorado and South Carolina reveal only minor differences between the two, and certainly nothing that would justify or necessitate transfer. In any event, this factor is not dispositive, particularly when weighed against all other considerations, including Plaintiff's choice of forum, the location and accessibility of witnesses and documents and the cost of making necessary proof. Defendants also have not identified any obstacles to a fair trial in Colorado or issues with respect to enforcement of a judgment against them. *Chubb v. Union Pac. R. Co.*, 908 F. Supp. 853, 855 (D. Colo. 1995) ("Defendant has noted neither obstacles to a fair trial in this jurisdiction nor asserted that there will be problems arising from enforcement of any judgment against it.) Accordingly, Defendants have failed to meet their burden of demonstrating that South Carolina would be a more convenient forum than Colorado or that the interests of justice require transfer.

### C. <u>Defendants' Motion to Dismiss Under Rule 12(b)(6), or Alternatively for a More Definite Statement, Should Be Denied</u>

In evaluating a Rule 12(b)(6) motion, a court must "accept all well-pleaded facts as true and view them in the light most favorable" to the party asserting the claim. *Jordan–Arapahoe, LLP v. Bd. of Cnty. Comm'rs.*, 633 F.3d 1022, 1025 (10th Cir. 2011). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The Tenth Circuit has interpreted "plausibility" to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). In so doing, the Court must accept Plaintiff's factual allegations as true and draw all reasonable inferences in Plaintiff's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236

(1974). "[T]he Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim." *Cayman Explor. Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989). Granting a motion to dismiss is "a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Id*. Thus, Defendants have to meet a very high bar to establish that the FAC should be dismissed, and because they are unable to do so, the Motion must be denied.

1. Hauschild Properly Alleged Its Claims Against Defendants

Defendants argue that the FAC should be dismissed because Plaintiff allegedly conflates the three Defendants into a single group without identifying each Defendants' respective wrongdoing. According to Defendants, "nowhere in the Complaint does Plaintiff even try to isolate the alleged wrongful conduct of each Defendant." (Doc. 18 at 15.) That is patently false.

As a threshold matter, "[t]here is no 'group pleading' doctrine, per se, that either permits or forbids allegations against defendants collectively; 'group pleading' does not violate Fed. R. Civ. P. 8 so long as the complaint provides sufficient detail to put the defendants on notice of the claims." *Robles v. City of Chicago*, 354 F. Supp. 3d 873, 875 (N.D. Ill. 2019). Thus, the relevant question is whether Hauschild has alleged sufficient allegations to put Defendants on notice of the claims against each of them. Hauschild respectfully submits that it has done so.

Further, because all Defendants are infringing Hauschild's trademarks, trade dress and trade secrets, it is proper for Hauschild to allege these claims against all of them. And, as noted in Section II.C, *supra*, Defendants themselves make no effort to distinguish among themselves in their advertising or on their website, which although owned and operated by FlackTek, Inc., nonetheless refers to "FlackTek" collectively as "we" throughout the website. Because Defendants make no effort to separate themselves, they cannot reasonably expect Hauschild, particularly at the outset of this litigation before the parties have conducted any discovery, to be able to identify, with specificity, each wrongful act committed by each Defendant. *See Carrado v. Daimler AG*, 2018 WL 4565562, at *4 (D. Colo. Sept. 24, 2018) (denying motion to dismiss based on alleged "group pleading" because complaint provided defendants with adequate notice, "allegations against the parties are not entirely different in character, and there is no risk of mistakenly grouping

allegations against unrelated entities" and "by the summary judgment stage, Plaintiffs will have had the benefit of discovery . . .")

Also, contrary to Defendants' assertions, Hauschild did identify each responsible wrongdoer in the FAC. For example, the FAC alleges that Hauschild entered into the Distribution Agreement with FlackTek, Inc. and describes the historical relationship between those parties. (Doc. 12, ¶¶ 23-31.) The FAC also identifies FlackTek, Inc. as the wrongdoer that filed applications to register infringing trademarks with the USPTO and FlackTek, Inc.'s wrongdoing with respect to the Termination Agreement. (*Id.* ¶¶ 38-51.) The FAC alleges that Defendants, collectively, use the infringing marks and domain name in an effort to wrongfully compete with Hauschild, which is factually true, based on Defendants' joint use of the mark and the website. Moreover, Defendants identify "employees" that self-identify as working for FlackTek, Inc. and/or FlackTek SpeedMixer, Inc. (Ex. A.) In short, Defendants "group" themselves together in the operation of their business without making any effort to distinguish their respective roles. For that reason, it is difficult, if not impossible, for Hauschild to provide any further detail regarding individual Defendants at this stage.[5]

Finally, each claim identifies the defendant or defendants against whom it is alleged. For example, contrary to Defendants' erroneous assertion, the fraud claim is alleged only against FlackTek, Inc. and includes allegations relating only to that party, to the specificity required by Rule 9. (Doc. 12, ¶¶ 160-170.) Nevertheless, the relevant inquiry is whether Defendants have notice of the claims against them, which they plainly do. *See Hughes v. Colorado Dep't of Corr.*, 594 F. Supp. 2d 1226, 1232 (D. Colo. 2009).

2. <u>Hauschild Properly Stated Its Claim for Violation of the CCPA</u>

Defendants erroneously argue that Hauschild failed to adequately allege its claim for violation of the CCPA because Hauschild allegedly did not plead the claim with particularity and because Hauschild allegedly failed to allege the requisite public impact. Defendants' arguments are nearly identical to those rejected by the district court in *HealthONE of Denver, Inc. v.*

[5] In fact, after Defendants filed the Motion, Hauschild's counsel asked Defendants' counsel if they could explain the specific roles of each Defendant, and Defendants' counsel was unable to do so.

*UnitedHealth Grp. Inc.*, 805 F. Supp. 2d 1115 (D. Colo. 2011). In that case, the defendant argued that the plaintiffs' claim for violation of the CCPA should be dismissed because the plaintiffs failed to allege that the defendant engaged in an unfair or deceptive trade practice as required by Fed. R. Civ. P. 9(b) and that the plaintiffs did not plead the necessary "significant public impact" that would support a CCPA claim. *Id.* at 1119. The court noted that, according to the Tenth Circuit, a "false representation within the context of the CCPA must either "induce a party to act, refrain from acting, or have the capacity or tendency to attract consumers." *Id.* at 1120. The *HealthONE* court thus found that the plaintiffs properly stated a claim for violation of the CCPA based on their allegations that the defendant appropriated the plaintiffs' marks, thus making a false representation to the public as to the source, sponsorship, or approval of the defendant's goods or services as to the affiliation, connection or association with the plaintiff's marks; the goods and services were closely related to those provided by the plaintiffs under their mark; and the defendants sold its goods and services in the same markets and to the same customers as the plaintiffs. *Id.* at 1120-21. Similarly, here, Hauschild properly alleges that Defendants' wrongful use of the marks and trade dress, constituting a false representation to the public as to the source, sponsorship, or approval of Defendants' products and services as to the affiliation, connection or association with Plaintiff. (Doc. 12, ¶ 187.) Among other allegations, Hauschild also alleges that by modifying Hauschild's machines and marking them with fake labels, Defendants are thus misrepresenting to consumers and to the public that the machines are Hauschild's machines, when in reality, the machines have been significantly modified by Defendants without Hauschild's approval or consent. (*Id.* ¶ 188.) In fact, Hauschild even inserted images of the genuine and fake labels in the FAC, thus showing the exact misrepresentations made by Defendants to the consuming public. (*Id.* ¶¶ 71-72.) Thus, the FAC alleges that Defendants' actions constitute a deceptive trade practice by knowingly or recklessly passing off their goods, services, or property as those of another within the meaning and in violation of Colo. Rev. Stat. § 6-1-105(1).

Hauschild also adequately pleads that Defendants' deceptive practice significantly impacts the public, including Defendants' false representations regarding certification of their machines to EU standards (Doc. 12, ¶¶ 189, 196), as well as improper installation of Hauschild's rotating arm,

which could cause serious injury to end users. (*Id.* ¶ 191.) This is more than an issue between competitors—the public is impacted by the sale of industrial machinery that include deceptive certification labels and the unauthorized and improper installation of parts into those machines that create a danger of harm to the end users. Thus, like the complaint at issue in *HealthONE*, the FAC, as a whole, sets forth facts that establish a public impact. *See* 805 F. Supp. 2d at 1121–22.

**D. Defendants' Motion to Strike Should Be Denied**

Motions to strike are generally "a disfavored and drastic remedy." *Sierra Club v. Tri–State Generation and Transmission Ass'n, Inc.*, 173 F.R.D. 275, 285 (D. Colo. 1997). Before granting a motion to strike, "the court must be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed." *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005). Nevertheless, to the extent the Court is inclined to strike the request for punitive or exemplary damages as premature, Hauschild seeks leave to amend its FAC accordingly.

## IV. CONCLUSION

For all of the foregoing reasons, Hauschild requests that this Court deny the Motion. If the Court is inclined to grant any relief to Defendants under Rule 12(b)(6), 12(e) or 12(f), Hauschild respectfully asks this Court for leave to amend.

DATED: December 10, 2020

**RESPECTFULLY SUBMITTED,**

*/s/ Sharon A. Urias*
Sharon A. Urias
**GREENSPOON MARDER LLP**
8585 E. Hartford Drive, Ste. 700
Scottsdale, AZ 85255
Telephone: 480.306.5458
Email: Sharon.urias@gmlaw.com

*/s/ Jessica B. Sander*
Jessica B. Sander
**GREENSPOON MARDER LLP**
200 E. Broward Boulevard, Ste. 1800
Fort Lauderdale, FL 33301
Telephone: 954.527.6236
Email: Jessica.sander@gmlaw.com

***Attorneys for Plaintiff Hauschild GmbH & Co KG***

**CERTIFICATE OF SERVICE**

I hereby certify that on December 10, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record.

*/s/ Lauren Fuller*