**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-02532-STV

HAUSCHILD GMBH & CO. KG, a German company,

Plaintiff,

v.

FLACKTEK, INC., a South Carolina corporation,
FLACKTEK MANUFACTURING, INC., a South
Carolina corporation, and FLACKTEK SPEEDMIXER, INC.,
a South Carolina corporation,

Defendants.

---

**PLAINTIFF HAUSCHILD GMBH & CO. KG'S RESPONSE IN OPPOSITION TO DEFENDANTS' AMENDED MOTION TO DISMISS FOR IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER TO THE DISTRICT OF SOUTH CAROLINA, MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT, AND MOTION TO STRIKE CLAIM FOR PUNITIVE DAMAGES ("MOTION")**

---

## I. INTRODUCTION

In the Motion, Defendants FlackTek, Inc. ("FTI"), FlackTek Manufacturing, Inc. ("FTM") and FlackTek SpeedMixer, Inc.'s ("FSM") (collectively, "Defendants") fail to address two critical issues that are fatal to their argument that the Court should dismiss this case for improper venue. First, Defendants did not raise the defense of personal jurisdiction in the Motion, thus waiving any right to contest personal jurisdiction under Rule 12(h) of the Federal Rules of Civil Procedure. Second, Defendants manufacture and sell their infringing machines in and from the State of Colorado. Because this Court has personal jurisdiction over Defendants and because a substantial part of the events giving rise to this matter occurred in Colorado, venue is proper in this district.

Defendants' request to transfer this case to South Carolina should be denied because

Defendants fail to meet their burden of proving that the existing forum is inconvenient. Indeed, the only party that arguably will benefit from transferring this case to South Carolina is FTI and, more specifically, its principal, Dale Flackett ("Flackett"). To support the request for transfer, Defendants merely identify a few witnesses that they purportedly intend to call that reside in South Carolina, all of whom are under Defendants' control, and deliberately omit a key employee that resides in Colorado, while glossing over the fact that all of Defendants' design and manufacturing operations are in Colorado. Thus, the Motion to transfer should be denied.

Defendants' request for dismissal or a more definite statement also should be denied. Hauschild properly alleged all of its claims against Defendants, and provided them with notice of the claims against each of them. Hauschild also properly pleaded its claim for violation of the Colorado Consumer Protection Act ("CCPA"), including allegations that Defendants engage in an unfair or deceptive trade practice and that their conduct has a "significant public impact."

Finally, if the Court is inclined to strike the request for punitive or exemplary damages as premature, Hauschild seeks leave to amend its First Amended Complaint ("FAC") accordingly.

## II. FACTUAL BACKGROUND

### A. Defendants' Manufacturing Operations Are Based In Colorado

In the Motion, Defendants omit any discussion of their current operations, which take place in Colorado. As prominently stated on the "Our Story" page of the FlackTek SpeedMixer website:

> We do all of our design and manufacturing work in the US, out of a state-of-the-art facility located next to the Rocky Mountains. There, we create the most advanced mixers on the market by leveraging our decades of mixing knowledge and using only the best nationally-sourced parts.

(Ex. A at 1, Emphasis added); Ex. B at 1 ("We proudly design, engineer, and manufacture our products at our world-class facility in the Rocky Mountains").) Thus, according to Defendants,

all of their design and manufacturing operations are in Colorado, not in South Carolina.

To bolster their argument that the case purportedly should have been filed in South Carolina, Defendants rely heavily on the parties' dealings during their distributorship, but utterly ignore Defendants' current, infringing activities, which take place in Colorado and underlie the majority of Hauschild's claims. (*See* Doc. 12, ¶¶ 54-55, 57, 65-81.) Defendants argue that witnesses supporting their defense reside in South Carolina, but fail to identify any witnesses that (i) reside in Colorado that Defendants know Hauschild will designate because of their involvement in the acts giving rise to Hauschild's claims or (ii) reside in places other than South Carolina.

Nevertheless, in a July 21, 2020 telephone call with Gerd Ulrich Schmidt ("Schmidt") of Hauschild, Flackett, the "owner and founder" of Defendants (Doc. 18-1, ¶ 1), admitted that an employee, Matthew Gross, "runs the business now." (Schmidt Decl. ¶ 5.) Matthew Gross ("Gross") lives in Boulder, Colorado, not in South Carolina, and will be a key witness in the case. (Schmidt Decl. ¶ 6; Ex. C.) Notably, Defendants did not list Gross as a witness in their Motion. Indeed, there are several members of "The Team," as identified on Defendants' website, that do *not* reside in South Carolina and who likely will be witnesses in this action due to their involvement in marketing, sales, product development, engineering and manufacturing. Such witnesses include, for example, Shane Green, a sales representative that resides in California and has worked for FTI since approximately 2007, Drew Tyger, a sales representative that resides in Montana, and Ted Reynolds, a FlackTek technical consulting employee that resides in Denver, Colorado, who claims on a website displaying photographs of Hauschild's machines that "SpeedMixer is the originator of the Dual Asymmetric Centrifuge (DAC) technology." ((Schmidt Decl. ¶¶ 7-10; Ex. D at 1.) With respect to witnesses in South Carolina, at this point in time, Hauschild only

anticipates calling Flackett and Brad Cisson, a former FlackTek employee.

**B. <u>Defendants' Wrongful Conduct Primarily Occurred in Colorado</u>**

Hauschild's claims arise out of Defendants' intentional and unlawful use of Hauschild's trademarks and trade secrets to manufacture and sell competing industrial mixers in the same markets as Hauschild. And, Defendants conduct all manufacturing operations in Colorado. (Exs. A & B.) Although Flackett's declaration seeks to downplay the Colorado manufacturing facility by claiming FTM "had no role in the development, modification, labeling or sale to end-user of the machines at issue in Plaintiff's First Amended Complaint," that is incorrect. (*See* Doc. 18-1, ¶ 2.) The machines at issue in the FAC include not only modified Hauschild machines, but also FlackTek machines manufactured in Colorado that infringe Hauschild's trademarks and trade dress, and include integral, proprietary parts removed from Hauschild's machines without its knowledge or consent. (Doc. 12, ¶¶ 75-80.) Moreover, although FTI has an office condominium in South Carolina, Defendants do not have a manufacturing facility there. (Schmidt Decl. ¶ 13.)

In addition, Flackett formed FTM in 2018 as the manufacturing arm of Defendants' business operations, which include: development of competing industrial mixers, modifications to Hauschild's SPEEDMIXER products, attempts to reverse engineer Hauschild's technology and the sale and marketing of "FlackTek SpeedMixers." (Doc. 12, ¶¶ 43, 51, 55, 120.) All such activities take place in Colorado under Gross' direction, control and supervision. (Schmidt Decl. ¶ 5.) Although Flackett avers that certain administrative functions take place in South Carolina, noticeably missing from his declaration are any averments that design, manufacturing, marketing and sales of "FlackTek SpeedMixer" machines occur in South Carolina, which is because they do not. (*See* Doc. 18-1.)

**C. <u>Defendants Do Not Distinguish Among Themselves</u>**

There is no clear delineation among FTI, FTM and FSM. With respect to Defendants' marketing, the <speedmixer.com> website includes all Defendants and makes little to no effort to differentiate them. For example, the "Our Story" page collectively refers to "FlackTek," stating that they are headquartered in Landrum, South Carolina, and that "***We*** do all of our design and manufacturing work ... next to the Rocky Mountains." (Ex. A at 1) (emphasis added). On the "Contact Us" page, Defendants represent that the "FlackTek SpeedMixer" "Global Headquarters" are located in South Carolina, without distinguishing between FTI and FSM (Ex. E at 1.) Defendants also represent that FTM is located in Louisville, Colorado. (*Id.*) Thus, throughout the website, Defendants refer to themselves collectively under the dba "FlackTek" or "FlackTek SpeedMixer." (*See* Exs. A & B.). And, the website's Terms of Use state that the website is owned and operated by FTI: "FlackTek Inc. ('we,' 'us,' or 'our') is proud to offer https://speedmixer.com (the 'Website'), to provide users in the United States ('you,' 'your') access to information about our SpeedMixer™ products and services (the 'Services')." (Ex. F at 1.) FTI also filed applications with the USPTO for the infringing marks, as alleged (and defined) in the FAC (Doc. 12, ¶¶ 38-42), however, all Defendants use the infringing marks and domain in connection with the marketing and sale of "FlackTek SpeedMixer" machines in direct competition with Hauschild.

**III. <u>LEGAL ARGUMENT</u>**

**A. <u>Venue Is Proper in the District of Colorado</u>**

A plaintiff's choice of forum is given considerable weight and should rarely be disturbed unless the balance of factors is strongly in favor of the movant. *Scheidt v. Klein*, 956 F2d 963, 965 (10th Cir. 1992). Here, Plaintiff's choice of forum is proper and should not be disturbed.

A civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located" or "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred ...." 28 U.S.C. § 1391(b). Also, for purposes of venue, "an entity with the capacity to sue and be sued in its common name under applicable law ... shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction ...." *Id.* § 1391(c)(2); *Berklee Coll. of Music, Inc. v. Music Indus. Educ., Inc.*, 733 F. Supp. 2d 204, 211 (D. Mass. 2010) (because court has personal jurisdiction over corporate defendant, venue is proper as to defendant). Further, "venue is not limited to the district with the *most* substantial events or omissions." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1165 (10th Cir. 2010) (emphasis in original). Here, there are at least two reasons why this Court is the proper venue. First, this Court has personal jurisdiction over Defendants. 28 U.S.C. § 1391(b)(1) & (c)(2). Second, a substantial part of the events giving rise to the FAC occurred in this judicial district. *Id.* § 1391(b)(2).

1. Venue Is Proper Because There Is Personal Jurisdiction Over Defendants

Personal jurisdiction may be exercised over a nonresident defendant in a federal question case if: (1) the defendant is amenable to service of process under the applicable statute or some other means; and (2) the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Peay v. Bellsouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000). Because the Lanham Act does not provide for service of process in a civil action, the issue of service is governed by Colorado state law. C.R.S. § 13–1–124(l) extends the courts' jurisdiction to the maximum extent consistent with the Due Process clause; thus, it is only necessary for this Court to decide if jurisdiction over Defendants by a Colorado district court is constitutionally

permissible. *OpenLCR.com, Inc. v. Rates Tech., Inc.*, 112 F. Supp. 2d 1223, 1227 (D. Colo. 2000). The due process inquiry requires: (1) the nonresident defendant must have ***purposefully availed*** himself of the benefits and protections of the forum state by establishing ***minimum contacts*** with the forum state; and (2) the exercise of jurisdiction must not offend traditional notions of fair play and substantial justice. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987).

The first prong of the due process inquiry regarding minimum contacts is divided into two types of personal jurisdiction, general and specific. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984). General jurisdiction will be invoked if the defendant's contacts with the forum are substantial, continuous and systematic. *Id.* at 414 n. 9. Specific jurisdiction is appropriate if the defendant's contacts with the forum arise from, or are related to, the plaintiff's claims. *Id.* at 427. This Court has both general and specific jurisdiction over Defendants.

In evaluating general jurisdiction, courts consider such factors as: (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state. *Beverly Kuenzle et al. v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 457 (10th Cir. 1996). Here, there is no question that Defendants are subject to this Court's general jurisdiction.

**FTM**: FTM has an address and a manufacturing facility in Colorado. It has employees in Colorado. (Exs. C & G.) It holds itself out to the public as doing business in Colorado. (Exs. A-C.) Flackett admits that its principal place of business is in Colorado. (Doc. 18-1, ¶ 2.)

**FTI**: FTI holds itself out to the public as conducting business operations in Colorado. On

the website owned and operated by FTI, it tells the public that "***We*** ***do*** ***all*** of our design and manufacturing work" in a facility "next to the Rocky Mountains." (Ex. A) (emphasis added).

**FSM:** It is unclear the exact role played by FSM in the manufacturing, advertising and sale of infringing products bearing its name. "FlackTek SpeedMixer" is featured prominently on the website, which holds "FlackTek" out to the public as conducting business in Colorado. FSM bears the same infringing name as the products produced in Colorado. Defendants do not address FSM, except to note that its principal place of business is in South Carolina. (Doc. 18-1, ¶ 1.) At least one employee, Gross—who resides in Colorado—claims to be employed by FTM. (Ex. H.)

With respect to specific jurisdiction, the court will exercise personal jurisdiction if the nonresident "defendant has purposefully directed its activities toward the forum jurisdiction and where the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum." *In re App. to Enforce Admin. Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413, 418 (10th Cir. 1996). "[W]here the defendant 'deliberately' has engaged in significant activities within a State ... he manifestly has availed himself of the privilege of conducting business there." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475-76 (1985). "Even a single purposeful contact may be sufficient ... when the underlying proceeding is directly related to that contact." *Wise v. Lindamood*, 89 F. Supp. 2d 1187, 1190 (D. Colo. 1999). There is no question Defendants have availed themselves of the laws of and directed their activities at Colorado in connection with the wrongful conduct alleged in the FAC. FTI and FSM market, advertise and sell infringing products that FTM makes under the infringing trademarks in the forum state. FTI owns and operates a website on behalf of all Defendants, in which they advertise the sale of products designed and made in Colorado. FSM has at least one employee in Colorado,

Gross, who "runs the business." (Schmidt Decl. ¶ 5.) Also, the exercise of specific jurisdiction over Defendants is reasonable, just and satisfies traditional notions of fair play. *Knowles*, 87 F.3d at 418. The burden on Defendants is minimal: Each Defendant has employees in Colorado; the facility in which the products at issue are manufactured is in Colorado; Defendants advertise that they have operations in Colorado; key evidence is fabricated, labeled and shipped out of Colorado (the infringing "FlackTek SpeedMixer" machines); and key witnesses are located in Colorado. *See Wise*, 89 F. Supp. 2d at 1190 (listing factors to be considered). Accordingly, this Court may properly exercise personal jurisdiction over Defendants, making venue proper in this district.

**a. Defendants Have Waived Personal Jurisdiction**

In their Motion, Defendants did not object to this Court's exercise of personal jurisdiction over them. By filing their venue challenge under Rule 12(b)(3) and omitting a personal jurisdiction challenge under Rule 12(b)(2), Defendants waived the right to do so. Fed. R. Civ. P. 12(h).

In an analogous case, *Consol. Props., Inc. v. Sherwin-Williams Co.*, 2018 WL 4610622 (D.V.I. 2018), the defendant filed a motion to dismiss for improper venue under Rule 12(b)(3) or alternatively to transfer under 28 U.S.C. §§ 1406(a) or 1404, however, the defendant did not challenge personal jurisdiction. The court held that by failing to object to the court's personal jurisdiction in its Rule 12 motion to dismiss, the defendant waived any challenge to the court's personal jurisdiction. Further, the court noted, "[w]here, as here, a defendant waives a challenge to personal jurisdiction, that defendant is subject to the court's [sic] personal jurisdiction," and it is deemed to reside in that district, making venue proper. *Id.* at *3. Likewise, here, Defendants did not raise the defense of personal jurisdiction in their Motion, thus waiving that defense. As such, Defendants are subject to this Court's personal jurisdiction and they are deemed to reside in

this district. *Sauer Brands, Inc. v. Duke Sandwich Prods., Inc.*, 2020 WL 90663, at *1 (W.D.N.C. Jan. 7, 2020) (defendants waived objection to personal jurisdiction by failing to include it in Rule 12(b) motion). Accordingly, venue is proper and the Motion to Dismiss should be denied.

2. Venue Is Proper Because a Substantial Part of the Events Giving Rise to Hauschild's Claims Occurred in This Judicial District

Venue also is proper in this district because a substantial part of the events giving rise to Plaintiff's claims occurred here. In *Sauer Brands, Inc.*, the defendants similarly filed a motion to dismiss or transfer a case arising under the Lanham Act, arguing that a substantial part of events giving rise to the claims did not occur in the judicial district. The court denied the motion, holding that "venue generally will lie where the events or omissions that would give rise to a potential claim for trademark infringement occur." 2020 WL 90663 at *2. The court noted that venue in a trademark action is appropriate where there are sales or advertising of the infringing goods or services. "Venue is appropriate where plaintiff sold or advertised goods bearing the accused mark, and where plaintiff placed the accused mark on the goods or prepared advertising bearing the mark." *Shijin Vapor, LLC v. Bolt USA, LLC*, 2020 WL 6873420, at *4 (N.D. Cal. Nov. 23, 2020).

Nearly all of Hauschild's claims arise out of Defendants' current, wrongful activities, namely, the advertising, manufacture and sale of infringing machines.[1] A cursory review of the FAC confirms that Defendants are incorrect in their argument that "Plaintiff asserts numerous federal and state law claims arising out of the February 1, 2008 Dealership Agreement with FTI." (Doc. 18 at 4.) The Trademark Infringement claim alleges that Defendants use the infringing

[1] Out of the FAC's 14 claims, only 4 (Third Claim—false advertising; Tenth Claim—fraud against FTI.; Eleventh Claim—Rescission against FTI; Twelfth Claim—Breach of Contract against FTI) do not directly involve the manufacture, advertising and sale of machines made in Colorado.

marks and domain name "in connection with their sale and advertising of industrial mixers and related products." (Doc. 12, ¶ 90.) The Passing Off claim alleges that Defendants sell "FlackTek SpeedMixer" machines (made in Colorado) at <speedmixer.com>, using Plaintiff's "Hauschild" name, other identifying information, including but not limited to descriptions of the machines as "engineered and hand built in Germany," Plaintiff's marks and photographs of Plaintiff's machines. (*Id.* ¶¶ 113-14.) The Reverse Passing Off claim alleges that Defendants manufacture and sell machines containing Hauschild parts. (*Id.* ¶¶ 120-23.) There simply is no question that the majority of the FAC is based on Defendants' current activities, all of which occur in Colorado.

**B. <u>There Are No Grounds to Transfer This Case Under 28 U.S.C. § 1404(a)</u>**

A party moving to transfer a case bears the burden of showing that the existing forum is inconvenient. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991). A district court may transfer an action "to any other district or division where it might have been brought or to any district or division to which all parties have consented" based on "the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). A court will consider: the plaintiff's choice of forum, the accessibility of witnesses and other sources of proof, questions as to the enforceability of a judgment if one is obtained, relative advantages and obstacles to a fair trial, difficulties that may arise from congested dockets, whether there are conflicts of laws, the advantage of having a local court determine questions of local law, "and, all other considerations of a practical nature that make a trial easy, expeditious and economical." 928 F.2d at 1516. If the balance of considerations is not strongly in favor of Defendants, the plaintiff's choice of forum should not be disturbed. *Wise*, 89 F. Supp. 2d at 1198, *citing William A. Smith Contracting Co. v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir. 1972).

1. <u>Hauschild's Choice of Forum Weighs Against Transfer</u>

"The plaintiff's choice of forum weighs against transfer" and "unless the balance is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed." *Scheidt*, 956 F.2d at 965. To obtain transfer, Defendants must demonstrate that Colorado is ***inconvenient***, not simply that South Carolina is ***preferable***. Defendants fail to meet their burden because they fail utterly to explain how or why Colorado is inconvenient. Rather, Defendants merely identify a few witnesses that they purportedly intend to call that reside in South Carolina and claim that some corporate documents are located there. Moreover, the facts giving rise to the lawsuit plainly have a material relationship and significant connection to Colorado, as explained in Sections II.A & B, *supra*. *See Employers Mut.*, 618 F.3d at 1168. Thus, this factor weighs in favor of Hauschild's choice of forum.

2. <u>Accessibility of Witnesses and Sources of Proof Weigh Against Transfer</u>

To demonstrate inconvenience, Defendants must "(1) identify the witnesses and their locations; (2) indicate the quality or materiality of their testimony; and (3) show that any such witnesses were unwilling to come to trial, that deposition testimony would be unsatisfactory or that the use of compulsory process would be necessary." 618 F.3d at 1169. To support their argument for transfer, Defendants identify three employees, one former employee and two CPAs that reside in South Carolina without explaining the materiality of the third-party testimony or showing that any witnesses are unwilling to come to trial in Colorado, that deposition testimony would be unsatisfactory or that the use of compulsory process would be necessary.

In *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992), the defendant sought to transfer the case to Florida under section 1404(a), identifying eight Florida witnesses that he expected to

call in the case. The Tenth Circuit affirmed the district court's denial of the motion to transfer, holding that the defendant's "meager showing failed to demonstrate the requisite inconvenience to his witnesses." *Id.* Likewise, here, Defendants' meager showing fails to prove that any material witnesses are unwilling to come to trial in Colorado—particularly as three of the witnesses are current employees and all of the witnesses (with the possible exception of the former employee) are within Defendants' control. *See Kapoor v. Nat'l Rifle Ass'n of Am.*, 343 F. Supp. 3d 745, 752 (N.D. Ill. 2018) ("[T]he convenience of witnesses employed by a party is entitled to little weight ..."). Also, it is hard to believe that Defendants' CPAs are material witnesses in this trademark infringement case; nor do Defendants explain the materiality of their testimony, other than to claim they prepared tax returns during the relevant time period. Further, the materiality, not the number, of prospective witnesses, will determine the extent to which their convenience will be weighed. *Employers Mut.*, 618 F.3d at 1169; *Galvin v. McCarthy*, 545 F. Supp. 2d 1176, 1182–83 (D. Colo. 2008) (denying motion to transfer case to Texas even though 12 out of 14 witnesses lived in Texas because "the vast majority of the Texas witnesses are Defendant's executives and employees.")

Notably absent from Defendants' Motion are the names of any witnesses that will offer testimony regarding the new, infringing machines built in Colorado,[2] the certification of the machines, the sourcing of parts, the use of Hauschild parts in those machines, persons with knowledge about the advertising, alleged product demonstrations or other information regarding Defendants' admission that "we do all of our design and manufacturing work in the US, out of a state-of-the-art facility located next to the Rocky Mountains." (Ex. A.) It is inconceivable that

[2] Flackett's declaration misleadingly refers only to Hauschild machines modified by FlackTek and omits any references to FlackTek machines built in Colorado. (Doc. 18-1, ¶ 4(c).)

Defendants do not have a single witness in this case that resides in Colorado, particularly in light of Flackett's statement to Schmidt that Gross "runs the business now." (Schmidt Decl. ¶ 5.)

Indeed, "in an infringement action, the most critical witnesses may be those officers and employees who were involved in the design, production, and sale of the [allegedly infringing] products." *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 548 (S.D.N.Y. 2008). Here, such witnesses include those involved in the "design and manufacturing work" performed in Colorado, such as Gross, who directs operations at the manufacturing facility. (Schmidt Decl. ¶ 5.) Other witnesses involved in the technical development of FlackTek's products do not reside in Colorado or South Carolina, such as David Hsieh, who is located in China and Andrew Larsen, who resides in Phoenix, Arizona. (*Id.* ¶ 12.) Moreover, in a trademark infringement case where likelihood of confusion is an issue, "the location of the headquarters of defendant is not of prime importance." 6 McCarthy on Trademarks & Unfair Competition § 32:73 (5th ed.) And, "the location of a defendant's headquarters does not generally, standing alone, justify a transfer there." *USLIFE Corp. v. Am. Republic Ins. Co.*, 218 U.S.P.Q. 298 (D.D.C. Aug. 19, 1982). Therefore, Defendants have not met their burden of proving South Carolina is a more convenient forum than Colorado.

3. Location of Evidence Weighs Against Transfer

Hauschild intends to demand inspection of the FlackTek machines and the manufacturing facility in Colorado. (Schmidt Decl. ¶ 14.) Other than identifying documents relating to performance of the Dealership Agreement, which Defendants claim are in South Carolina, Defendants do not identify any other evidence in South Carolina. Nor have Defendants claimed to have a manufacturing facility in South Carolina; that is because they do not. (*Id.* ¶ 13.)

Defendants also have not submitted any evidence to support their argument that the cost of

making necessary proof supports transfer. (*See* Doc. 18 at 10.) Other than arguing that most of the witnesses reside in South Carolina, which is false, Defendants merely contend that documents relating to performance of the Dealership Agreement are located in South Carolina and that "Defendants' offices" are located in South Carolina. Nevertheless, "[t]he location of documents and sources of proof have become a less significant factor in the § 1404(a) transfer analysis because of technological advances and availability of documents in electronic form." *Holmes v. Polaris, Inc.*, 2020 WL 5107291, at *3 (E.D. Mich. Aug. 31, 2020). In *Galvin v. McCarthy*, 545 F. Supp. 2d 1176 (D. Colo. 2008), the court denied the defendant's request to transfer the case to Texas, noting, among other things, the defendant failed to explain why the transmittal of records, either in paper or electronic form, to Colorado is more inconvenient than transferring the information within Texas. The court observed, "[e]ither way, the information and documentation will need to be copied or scanned and delivered to counsel for Plaintiff. Thus, Spirit has failed to show that the location of the evidence weighs in favor of transfer." *Id.* at 1183. Similarly, Defendants have to copy or scan documents and deliver them to counsel in paper or electronic form, and Defendants have not shown that the location of documents in South Carolina makes Colorado a less convenient forum. It is hard to believe there are no documents at Defendants' Colorado facility, where the "FlackTek SpeedMixer" machines are designed and manufactured and where Gross "runs the business." Given the issues in this case, Plaintiff will demand that Defendants produce documents relating to the design, manufacture and shipment of such machines.

4. <u>Transfer of the Case Would Not Be in the Interest of Justice</u>

Defendants have not shown that transfer of this case would be in the interest of justice. Contrary to Defendants' attempt to manufacture a justification for transfer, none exists. According

to statistics offered in Defendants' Motion, the average time from filing to disposition is shorter in the District of Colorado than in the District of South Carolina. (Doc. 18 at 12.)

Further, the statistics presented by Defendants regarding the dockets of Colorado and South Carolina reveal only minor differences between the two, and certainly nothing that would justify or necessitate transfer. In any event, this factor is not dispositive, particularly when weighed against all other considerations, including Plaintiff's choice of forum, the location and accessibility of witnesses and documents and the cost of making necessary proof. Defendants also have not identified any obstacles to a fair trial in Colorado or issues with respect to enforcement of a judgment against them. *Chubb v. Union Pac. R. Co.*, 908 F. Supp. 853, 855 (D. Colo. 1995). There also is no issue regarding potential conflicts of law. This is not a diversity case, it is one arising under federal question jurisdiction with pendent state claims, and "[t]his factor receives less weight when the case involves relative[ly] simpl[e] legal issues." *Employers Mut.*, 618 F.3d at 1169 (*citing Scheidt*, 956 F.2d at 966 (noting "the applicability of Florida law is not a significant concern in light of the relative simplicity of the legal issues involved in the common law fraud and breach of contract claims").) Moreover, the FAC includes a claim for violation of the CCPA, which this Court has a local interest in deciding. *See* 618 F.3d at 1170. Accordingly, Defendants have failed to meet their burden of demonstrating that South Carolina would be a more convenient forum than Colorado or that the interests of justice require transfer.

**C. <u>The Motion to Dismiss or for a More Definite Statement, Should Be Denied</u>**

In evaluating a Rule 12(b)(6) motion, a court must "accept all well-pleaded facts as true and view them in the light most favorable" to the party asserting the claim. *Jordan–Arapahoe, LLP v. Bd. of Cnty. Comm'rs.*, 633 F.3d 1022, 1025 (10th Cir. 2011). Rule 12(b)(6) must be read

in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The Tenth Circuit has interpreted "plausibility" to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Granting a motion to dismiss is "a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Cayman Explor. Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989). Thus, Defendants have to meet a very high bar to establish that the FAC should be dismissed, and because they are unable to do so, the Motion must be denied.

1. Hauschild Properly Alleged Its Claims Against Defendants

As a threshold matter, "[t]here is no 'group pleading' doctrine, per se, that either permits or forbids allegations against defendants collectively; 'group pleading' does not violate Fed. R. Civ. P. 8 so long as the complaint provides sufficient detail to put the defendants on notice of the claims." *Robles v. City of Chicago*, 354 F. Supp. 3d 873, 875 (N.D. Ill. 2019). The relevant question is whether Hauschild has alleged sufficient allegations to put Defendants on notice of the claims against each of them. Hauschild respectfully submits that it has done so. Because all Defendants are infringing Hauschild's trademarks, trade dress and trade secrets, it is proper to allege these claims against all of them. And, Defendants make no effort to distinguish among themselves in their advertising or on their website, which although owned and operated by FTI, nonetheless refers to "FlackTek" collectively as "we" throughout the website. Because Defendants

make no effort to separate themselves, they cannot reasonably expect Hauschild, particularly at the outset of this action before the parties have conducted any discovery, to be able to identify, with specificity, each wrongful act committed by each Defendant. *Carrado v. Daimler AG*, 2018 WL 4565562, at *4 (D. Colo. Sept. 24, 2018) (denying motion to dismiss for "group pleading" because complaint provided defendants adequate notice, "allegations against the parties are not entirely different in character, and there is no risk of mistakenly grouping allegations against unrelated entities" and "by the summary judgment stage, Plaintiffs will have had the benefit of discovery ...") Contrary to Defendants' assertions, the FAC does identify each responsible wrongdoer. For example, the FAC alleges that Hauschild entered into the Distribution Agreement with FTI and describes the parties' historical relationship. (Doc. 12, ¶¶ 23-31.) The FAC identifies FTI as the wrongdoer that filed trademark applications and FTI's wrongdoing with respect to the Termination Agreement. (*Id.* ¶¶ 38-51.) The FAC alleges that Defendants, collectively, use the infringing marks and domain name to wrongfully compete with Hauschild based on Defendants' joint use of the marks and website. Moreover, the website lists "employees" that self-identify as working for FTI and/or FSM. (Exs. A & H.) In short, Defendants "group" themselves together in the operation of their business without making any effort to distinguish their respective roles. For that reason, it is difficult, if not impossible, for Hauschild to provide any further detail regarding individual Defendants at this stage.[3] Finally, each claim identifies the defendant or defendants against whom it is alleged. For example, the fraud claim is alleged only against FTI and includes allegations relating only to that party, to the specificity required by Rule 9. (Doc. 12, ¶¶ 160-70.)

[3] In fact, after Defendants filed the Motion, Hauschild's counsel asked Defendants' counsel if they could explain the specific roles of each Defendant, and Defendants' counsel were unable to do so.

The relevant inquiry is whether Defendants have notice of the claims against them, which they do. *See Hughes v. Colorado Dep't of Corr.*, 594 F. Supp. 2d 1226, 1232 (D. Colo. 2009).

2. Hauschild Properly Stated Its Claim for Violation of the CCPA

Defendants erroneously argue that Hauschild failed to adequately allege its CCPA claim by not pleading with particularity and by failing to allege the requisite public impact. Defendants' arguments are nearly identical to those rejected in *HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*, 805 F. Supp. 2d 1115 (D. Colo. 2011). In that case, the defendant argued that the CCPA claim should be dismissed because the plaintiffs did not allege the defendant engaged in an unfair or deceptive trade practice) and the plaintiffs did not plead the necessary "significant public impact." *Id.* at 1119. The court noted that a "false representation within the context of the CCPA must either "induce a party to act, refrain from acting, or have the capacity or tendency to attract consumers," *Id.* at 1120. The court thus held that the plaintiffs properly stated a CCPA claim based on their allegations that the defendant appropriated the plaintiffs' marks, thus making a false representation to the public; the goods and services were closely related to those provided by the plaintiffs under their mark; and the defendants sold goods and services in the same markets and to the same customers as the plaintiffs. *Id.* at 1120-21. Similarly, here, Hauschild properly alleges that Defendants' wrongful use of the marks and trade dress constitutes a false representation to the public as to the source, sponsorship, or approval of Defendants' products as to the affiliation, connection or association with Plaintiff. (Doc. 12, ¶ 187.) Hauschild alleges that by modifying Hauschild's machines and marking them with fake labels, Defendants misrepresent to consumers and to the public that the machines are Hauschild's machines, when in reality, the machines have been significantly modified by Defendants without Hauschild's consent. (*Id.* ¶ 188.) In fact,

Hauschild even inserted images of the genuine and fake labels in the FAC, showing the exact misrepresentations made by Defendants to the consuming public. (*Id.* ¶¶ 71-72.) Hauschild also alleges that Defendants' deceptive practices significantly impact the public, including false representations regarding EU certification of Defendants' machines and improper installation of Hauschild's rotating arm, which could cause serious injury. (Doc. 12, ¶¶ 189-191, 196.) This is more than an issue between competitors—the public is impacted by the sale of machines that contain deceptive certification labels and the unauthorized, improper installation of parts into those machines that create a risk of harm. Thus, like the complaint in *HealthONE*, the FAC, as a whole, sets forth facts that establish a public impact. *See* 805 F. Supp. 2d at 1121–22.

### D. Defendants' Motion to Strike Should Be Denied

To the extent the Court is inclined to strike the request for punitive or exemplary damages as premature, Hauschild seeks leave to amend its FAC accordingly.

## IV. CONCLUSION

Hauschild requests that this Court deny the Motion. If the Court is inclined to grant any relief to Defendants under Rule 12, Hauschild respectfully asks this Court for leave to amend.

**RESPECTFULLY SUBMITTED**:

On December 11, 2020

*/s/ Sharon A. Urias*
Sharon A. Urias
**GREENSPOON MARDER LLP**
8585 E. Hartford Drive, Ste. 700
Scottsdale, AZ 85255
Telephone: 480.306.5458
Email: Sharon.urias@gmlaw.com

*/s/ Jessica B. Sander*
Jessica B. Sander
**GREENSPOON MARDER LLP**
200 E. Broward Boulevard, Ste. 1800
Fort Lauderdale, FL 33301
Telephone: 954.527.6236
Email: Jessica.sander@gmlaw.com

***Attorneys for Plaintiff Hauschild GmbH & Co KG***

**CERTIFICATE OF SERVICE**

I hereby certify that on December 11, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record.

*/s/ Lauren Fuller*