IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-02532-STV

HAUSCHILD GMBH & CO. KG, a German company,

Plaintiff,

v.

FLACKTEK, INC., a South Carolina corporation,
FLACKTEK MANUFACTURING, INC., a South
Carolina corporation, and FLACKTEK SPEEDMIXER, INC.,
a South Carolina corporation,

Defendants.

## DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants FlackTek, Inc., FlackTek Manufacturing, Inc., and FlackTek SpeedMixer, Inc., ("Defendants"), through their attorneys, Berg Hill Greenleaf Ruscitti, LLP, Respectfully requests complete dismissal of Plaintiff's Fourth, and Ninth causes of action, and partial dismissal of Plaintiff's Seventh, Tenth and Twelfth causes of Action as plead in its Second Amended Complaint ("SAC") (Dkt. No. 51).

**I. STANDARDS GOVERNING A RULE 12(b)(6) MOTION TO DISMISS**

Rule 12(b)(6) mandates dismissal of a complaint that "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal is appropriate where, as here, Plaintiff has failed to offer sufficient factual allegations to make its asserted claims plausible on their face. *See Ashcroft* v. *Iqbal,* 129 S. Ct. 1937, 1949 (2009). The non-moving party must provide "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

1

**II. PLAINTIFF FAILS TO STATE A CLAIM FOR TRADE DRESS INFRINGEMENT**

Plaintiff has failed to plead a plausible claim of trade dress infringement for the following reasons:

A. PLAINTIFF FAILS TO IDENTIFY ANY PROTECTABLE TRADE DRESS OR ALLEGEDLY THE INFRINGING PRODUCT

"In order to state a claim for trade dress infringement … a plaintiff must specifically define the list of elements that comprise the trade dress." *Treat, Inc. v. Dessert Beauty*, No. 05–923–PK, 2006 WL 2812770, at *14 (D. Or. May 5, 2006). For this reason, to survive a motion to dismiss, the Plaintiff must plead sufficient facts to place the Defendants on notice of the specific elements which comprise its distinct trade dress. *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d. 303, 310 (3rd Cir. 2014)(citing *Twombly*, 550 U.S. at 555). The court in *Shevy Custom Wigs* outlined the reasons for requiring specificity in pleadings, including ensuring that the trier of fact can evaluate the trade dress's uniqueness, avoid anti-competitive lawsuits, prevent the monopolization of concepts, and giving the defendant fair notice of the alleged infringement. *Shevy Custom Wigs, Inc. v. Aggie Wigs*, No. 06 CV 1657, 2006 WL 3335008, at *5 (E.D.N.Y. Nov. 17, 2006).

Plaintiff defines its mixing machines' trade dress as "<u>including but not limited to</u> shape, size, color and appearance."[1] (*See* SAC at ¶¶ 107)(emphasis added) Nowhere does the Complaint define what "shape, size, color and appearance" mean or how they are incorporated into Defendants' machines. In *Dinkum Systems, Inc. v. Woodman Labs, Inc*., this Court rejected similarly "bare allegations" of trade dress as insufficient to support a claim under *Iqbal*. No. 14-cv-00152-PAB-KMT, 2014 WL 4437310, at *4 (D.Colo., 2014).

---

[1] Plaintiff's admission that its trade dress claims are "not limited to" the four corners of the SAC makes it impossible for Defendants to ascertain what trade dress it contends was infringed, and if Plaintiff intends to expand its claims over the course of the litigation.

While the Complaint attaches unannotated photographs of its mixing machines, "[t]he mere attachment of photographs is not sufficient to provide notice of what elements are alleged to constitute the trade dress at issue." *Liko AB v. Rise Lifts, Inc.*, No. 07-5302, 2008 WL 2977869, at *6 (E.D. Pa. July 31, 2008). A photograph can only be helpful when marked or annotated to distinguish the purported trade dress from other elements of the product design. *See Forest River, Inc. v. Winnebago Industries, Inc.,* No. 3:15-CV-609 RLM-MGG, 2017 WL 590245, at *3 (N.D. Ind., 2017) (granting motion to dismiss and noting failure to identify trade dress with specificity in photographs attached to the Complaint or show side-by-side comparison of the products).

Plaintiff's lack of specificity is compounded by the fact the SAC identifies <u>six (6) separate</u> mixing machines that each have a different "shape, size, color and appearance". (*See e.g.*, SAC at ¶ 29, Exhibit A at 1, and Exhibit G at 14). The SAC does not identify which, if any of Defendants' line of mixing machines it alleges incorporates Plaintiff's trade dress. Whether Plaintiff seeks to protect one or all of the disclosed machines, where broad protection over a series of products is claimed, Plaintiff still has the burden of establishing the existence of a recognizable trade dress showing a consistent overall look. *Walt Disney Co. v. Goodtimes Home Video Corp.*, 830 F.Supp. 762, 770 (S.D.N.Y. 1993). Plaintiffs "imprecision and vagueness is unfair to [Defendants (and this Court)] who [are] forced to defend against an amorphous claim of exclusivity which is of uncertain and indeterminate dimensions." McCarthy on Trademarks and Unfair Competition § 8:3 (4th ed.).

B. <u>Plaintiff Fails To Identify Any Non-Functional Trade Dress</u>

Specificity is also necessary to ascertain whether the claimed trade dress is non-functional. *See Glassybaby, LLC v. Provide Gifts, Inc.*, 2011 WL 2218583, at *2 (W.D. Wash. June 6, 2011) ("It is not possible to determine what the features of [the products] are and whether they are functional or non-functional. This is not adequate to satisfy Rule 12(b)(6)."). In a civil action for

3

unregistered trade dress infringement, the party who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional. *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001). This burden of proof gives force to the well-established rule that trade dress protection may not be claimed for product features that are functional. *Id.* The non-functionality requirement is accordingly a threshold issue. A feature found to be functional "cannot be a valid trademark or trade dress: the issue of validity is decided—there is no intellectual property to be protected and [] free and open competition by imitation is permitted." McCarthy on Trademarks and Unfair Competition § 7:63 (4th ed.).

Plaintiff alleges no facts that describe any nonfunctional details of the "shape, size, color and appearance" of its mixing machines. The only details of Plaintiff's machines in the SAC describe elements that are undoubtedly functional.[2] For example, Plaintiff specifically states:

> "Hauschild's SPEEDMIXER line of products include bladeless industrial mixers combining opposite centrifugal forces resulting in an extremely efficient mixing process. Almost any kind of material can be used in a SPEEDMIXER machine for rapid mixing, dispersing or grinding.").

(*See* SAC at ¶ 14). Plaintiff has failed to identify a single non-functional element of its machines and the Court should dismiss its trade dress claim.

C. PLAINTIFF'S MIXING MACHINE IS NOT INHERENTLY DISTINCTIVE AND LACKS SECONDARY MEANING

Because product design "is not inherently distinctive" as a matter of law, those asserting rights in product-design trade dress, like Plaintiff here, must first establish secondary meaning. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 214 (2000). ("[A] product's design is distinctive, and therefore protectable, only upon a showing of secondary meaning."). "To establish

---

[2] *See also* SAC at Exhibit A which is a detailed user's manual specifying the distinct functional features of Plaintiff's mixing machines.

4

secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature [ ] is to identify the source of the product rather than the product itself." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982). Moreover, the elements making up the alleged trade dress must have been used in such a manner as to denote product source. Thus, a product feature whose only impact is decorative and aesthetic, with no source-identifying role, cannot be given exclusive rights under trade dress law."). *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc*., 669 F. Supp. 2d 1235, 1249 (D. Colo. 2009).

Plaintiff makes a single conclusory statement that its mixing machines are "inherently distinctive and non-functional or ha[ve] acquired secondary meaning." (*See* SAC at ¶¶ 110)(emphasis added). Plaintiff provides no examples of advertising that show that the claimed features have been presented to the public in such a sway as to denote product source. Plaintiff alleges no facts that support a finding that in the minds of the public, the primary significance of the mixing machines' nonfunctional features "is to identify the source of the product rather than the product itself." *Urban Group Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc*., No. 12 Civ. 3599(RWS), 2012 WL 3240442 at *7 (S.D.N.Y. Aug. 7, 2012) (dismissing trade dress claim for failure to allege that nonfunctional aspects of product had acquired secondary meaning) (citation and quotation omitted). This threadbare recital of the elements of a cause of action, supported by mere conclusory statements is inadequate to state a claim for which relief can be granted. *Iqbal*, 556 U.S. at 678–79.

Notably, although color alone can gain secondary meaning, Plaintiff fails to identify which color constitutes its protectable trade dress and further has not alleged any facts as to how the unidentified color gained secondary meaning under the law. *Qualitex Co. v. Jacobson Prod. Co*., 514 U.S. 259, 171-172 (1995).

5

D. COPYING UNPATENTED FUNCTIONAL ELEMENTS OF A PRODUCT IS NOT ACTIONABLE

Assuming *arguendo,* Defendants adopted elements of Plaintiffs' mixing machines, Plaintiff would still have no cause of action. As a matter of law, copying unpatented, functional elements of a design is expressly permitted, even if it creates consumer confusion. *Dinkum Systems, Inc. v. Woodman Labs, Inc.*, No. 14-cv-001520PAB-KMT, 2014 WL 4437310, at *3 (D.Colo., 2014)(*citing Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 232 (1964))("mere inability of the public to tell two identical articles apart is not enough to support an injunction against copying or an award of damages for copying that which the federal patent laws permit to be copied"); *see also Shakespeare Co. v. Silstar Corp. of Am., Inc.*, 9 F.3d 1091, 1104 (4th Cir. 1993) (noting the "strong federal policy against granting perpetual private rights in functional designs"). Plaintiff has failed to identify a single non-functional element of trade dress incorporated into Plaintiff's products and its claim should be dismissed.

### III. PLAINTIFF FAILS TO STATE A CLAIM FOR MISAPPROPRIATION OF TRADE SECRETS

Plaintiff has failed to plead a plausible claim for trade secret misappropriation under the under 18 U.S.C. § 1836 ("DTSA") for the following reasons:

A. PLAINTIFF'S TRADE SECRET CLAIMS ARE NOT PLED WITH SPECIFICITY

A plaintiff seeking relief for misappropriation of trade secrets must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons ... skilled in the trade." *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164–65 (9th Cir. 1998). Plaintiff has failed to allege a protectable trade secret. The SAC does little more than recite generic categories of allegedly misappropriated information which is insufficient to support a claim under *Iqbal*. *See Int'l. Academy of Bus. and Fin. Mgm't., Ltd. v. Mentz*, No. 12-cv-00463-CMA-BNB, 2013 WL 212640,

6

at *9 (D. Colo. Jan. 18, 2013) (Pleading standard is not met when plaintiffs merely identify broad categories of allegedly protected information.). Plaintiff defines the scope of its trade secrets as:

> "<u>including but not limited to</u> confidential information regarding potential or actual Hauschild <u>customers and vendors</u> and information regarding Hauschild's <u>processes and technology</u>, represent technical, business and financial information including formulas, methods, techniques, processes and procedures."

(SAC at ¶ 147)(emphasis added). Nowhere does the Complaint define the term "processes" or "technology" or otherwise explain which particular categories of processes or technology are alleged to have been misappropriated and how they related to its mixing machines.[3] *See Composite Marine Propellers, Inc. v. Van Der Woude,* 962 F.2d 1263, 1266 (7th Cir.1992) (a plaintiff must do more than just identify a kind of technology and then invite the court to hunt through the details in search of items meeting the statutory definition.)

Plaintiff's general claim of trade secret in its customer and vendor lists fails for at least two additional reasons: First, as an exclusive distributor and collaborator for over 20-years, Defendant Flacktek, Inc., not Hauschild, generated the majority of the customer and vendor lists at issue. *Composite, 962 F.2d at 1263.*) (Companies that fail to take measures to protect against disclosure by third-parties privy to trade secret information, such as suppliers or distributors, may lose protection for the information.) Second, Plaintiff's SAC contradicts its trade secret claims by including the names and logos of its customers and vendors on its website incorporated by reference in the SAC.[4] (*See* SAC at ¶ 16).

---

[3] Again, Plaintiff's admission that the list of trade secrets is "not limited to" the four corners of the SAC makes it impossible for Defendants or this Court to ascertain what trade secrets it contends were actually misappropriated.

[4] The website listed in paragraph of 16 of the SAC redirects to the following website:
www.hauschild-speedmixer.com/
www.hauschild-speedmixer.com/partnerships



Information "cannot be placed in the public domain and still be retained as a 'secret'. That which has become public property cannot be recalled to privacy." *Skoog v. McCray Refrigerator Co.*, 211 F.2d 254, 257 (7th Cir. 1954). Plaintiff's disclosure of its customers and vendors to the public is fatal its claims of trade secret. *Colorado Supply Co., Inc. v. Stewart*, 797 P.2d 1303, 1306 (Colo. App. 1990) (customer lists are not to be a trade secret because no proper and reasonable steps were taken by the owner to protect the secrecy of the information)

B. P<span style="font-variant:small-caps">laintiff's Mixing Machines Are Not A Protectable Trade Secret</span>

Plaintiff's mixing machine, including detailed descriptions of the design and manufacture of its rotating arms, are disclosed in expired U.S. Patent No. 6,709,151 (the "'151 Patent").[5] (Exhibit A – which is a true and correct copy of the '151 Patent as recorded by the U.S. Patent and Trademark Office). The '151 Patent claims priority to a prior foreign patent filed in September 1, 2001, and was published by the U.S. Patent and Trademark Office on April 10, 2003.

As a result, detailed information regarding the manufacturer and use of Plaintiff's mixing machine, and in particular its "rotating arms," has been publicly available for over 18 years (Exhibit A at page 1). Plaintiff's allegations of trade secret misappropriation of its "rotating arms"

---

[5] *Won-Door Corp. v. Cornell Iron Works, Inc.*, 2014 WL 119320, at *2 (D. Utah, 2014) (Courts may take judicial notice of patent documents).

8

fail as a matter of law as no trade secret may be maintained over subject matter disclosed in an expired patent. *See Stanley Aviation Corp. v. U.S.*, No. 74-F-1., 1977 WL 22876, at *1 (D. Colo., 1977)(Once a trade secret has become the subject of a valid patent, the secret disappears, and the only source of liability is generally through the patent laws for infringement.); *see also Henry Hope X–Ray Prods., Inc. v. Marron Carrel, Inc.*, 674 F.2d 1336, 1342 (9th Cir.1982) ("[m]atters disclosed in a patent publication destroy any trade secret contained therein.").

### C. ANY TRADE SECRET IN PLAINTIFF'S MIXING MACHINE HAS BEEN ABANDONED AND REVERSE ENGINEERING A PUBLICLY AVAILABLE PRODUCT IS NOT ACTIONABLE

Sale of a finished product to the public results in abandonment of any claim of trade secret or confidentiality. *National Presto Industries, Inc. v. Hamilton Beach, No.* 88 C 10567, 1990 WL 208594 at *8 (N.D. Ill. Dec. 12, 1990). Plaintiff's mixing device has been sold to the public for nearly 50 years. (SAC at ¶ 17-18) Any trade secret or claim of confidentiality in the device and its operation were abandoned decades before any Defendants existed. As a result, Plaintiff's claim of misappropriation is not actionable under the law. *See Powell Products, Inc. v. Marks*, 948 F. Supp. 1469, 1475 (D.Colo.1996) ("If the design of the plaintiff's machine is not a trade secret, plaintiff has no property right in its design, and it therefore would have no claim.").

Moreover, the design, manufacturer, and use Plaintiff's mixing devices could not plausibly be considered "confidential" information subject to either the 2008 Distributor Agreement or the 2020 Termination Agreement, (*See e.g.*, SAC at Exhibits B-C) as by that point the information had already been in the public domain for decades. *See Flotec, Inc. v. S. Rsch.,* Inc., 16 F. Supp. 2d 992, 1007 (S.D. Ind. 1998)(there exists no reasonable expectation of confidentiality where a finished product is sold to the public such that an engineer could measure its dimensions carefully.).

Even assuming, *arguendo,* Plaintiff could assert a plausible claim of trade secret in its mixing device or rotating arms, there exists no cause of action of trade secret misappropriation for reverse engineering a publicly available unpatented product. As a threshold issue, "[i]nformation that can be obtained from examining products sold into the public domain…cannot constitute a trade secret." *Accent Packaging, Inc. v. Leggett & Platt, Inc*., 707 F.3d 1318, 1329 (Fed. Cir. 2013). To the contrary, the law encourages competitors to reverse engineer products that are in the public domain. The Supreme Court has stated [t]he owner of a trade secret is not entitled to prevent others from using public information to replicate [their] product, nor may the owner prevent others from making similar products which are not derived from the trade secret. *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 476 (1974); *see also Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 155 (1989) (the public is "free to discover and exploit ... trade secret[s] through reverse engineering of products in the public domain").

## IV. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE CCPA

Plaintiff has failed to plead a plausible claim under the Colorado Consumer Protection Act ("CCPA") for the following reasons:

### A. PLAINTIFF HAS FAILED TO PLEAD CCPA CLAIM WITH THE REQUIRED PARTICULARITY

Plaintiff's claim under the CCPA is subject to heightened pleading standard with respect to the deceptive practices element. *Int'l Acad. of Bus. & Fin. Mgmt., Ltd. v. Mentz*, No. 12-cv-00463-CMA-BNB, 2013 WL 3771288, at *6 (D. Colo. July 17, 2013). Plaintiff fails to identify with particularity what action(s), if any, each individual Defendant allegedly undertook that violates the CCPA and this claim should be dismissed. *Gen. Steel Domestic Sales, LLC v. Chumley*, No. 10-cv-01398-PAB-KLM, 2011 WL 2415167 at *4 (D. Colo. June 10, 2011) (dismissing claim

where plaintiff "failed to specifically allege the who, when, where, and how of the statement underlying its CCPA claim").

### B. P<span style="font-variant:small-caps">laintiff Has Failed to Plead An Actionable Public Impact</span>

Plaintiff's injury is private in nature, it is not actionable under the CCPA. "[I]f a wrong is private in nature and does not affect the public, a claim is not actionable under the CCPA." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 149 (Colo. 2003). There is no plausible allegation that the harm suffered by Plaintiff was suffered by the public as a whole that would satisfy the public impact element of the CCPA. As the Colorado Supreme Court held:

> Van Rees makes the conclusory allegation that Unleaded's "deceptive trade practice significantly impacts the public as actual or potential consumers" of Unleaded. … But Van Rees's complaint alleges only "his own economic loss," not "any harm or potential harm to identifiable segments of the public." … In other words, the complaint makes no allegation that Unleaded inducted others into entering contracts with similar misrepresentations regarding its web design capabilities. We conclude that Van Rees's allegations are insufficient to state a claim because they are "bare bones" and "only sketch the elements of a CCPA offense."

*Van Rees v. Unleaded Software, Inc.*, 373 P.3d 603, 609 (Colo. 2016). Plaintiff's makes only the following conclusory allegations of public impact in its SAC:

> 191. Additionally, <u>upon information and belief,</u> Defendants have not properly installed Plaintiff's machine parts in their infringing FlackTek machines, which is not only damaging to Hauschild, but <u>could be</u> dangerous and cause serious injury to end users.
> \*\*\*
> 196. Defendants' deceptive trade practices significantly impact Plaintiff as well as the public as actual or potential consumers of Defendants' goods, services or property.

(Second Am. Compl., ¶ 191, and 196)(emphasis added). Consistent with the holding in *Van* Rees, conclusory "bare bones" statements of public harm based on perceived deceptive trade practices are insufficient to support a claim under the CCPA. *Supra*. at 609. Moreover, the court is not obliged to accept a speculative allegation, unsupported by any evidence that "upon information

and belief" Defendant's product "could be" dangerous at some point in the future. [6] *See Stevens v. Harper*, 213 F.R.D. 358, 370 (E.D. Cal., 2002)("the court is not obliged to accept allegations of future injury which are overly generalized, conclusory, or speculative). To do otherwise would allow the *per se* application of the public impact rule based on any speculative allegation that a consumer "could be" harmed in the future. Courts have uniformly rejected this. *See Brodeur v. American Home Assur. Co.*, 169 P.3d 139, 156 (Colo. 2007)(The nature and scope of [defendant's] business and its use of public forums do not automatically or presumptively create the necessary public impact.")

## V. PLAINTIFF FAILS TO STATE A CLAIM FOR UNFAIR COMPETITION, FRAUD, AND BREACH OF CONTRACT

Plaintiff's claims of Common-law Unfair Competition, Fraud, and Breach of Contract all rely, at least in part on allegations of trade dress infringement as well as misappropriation for trade secrets. (*See* SAC at ¶ 134, 163, 168, and 178). Plaintiff has not plead sufficient facts to support these claims. As a result, this Court should also partially dismiss these claims to the extent based on the same deficient allegations. *C.f. Dinkum Systems, Inc. v. Woodman Labs, Inc.*, No. 14-cv-00152-PAB-KMT, 2014 WL 4437310, at *3 (D. Colo., 2014)(dismissing claim for common law unfair competition based on Plaintiff's failure to identify non-functional trade dress).

## CERTIFICATE OF CONFERRAL

Pursuant to D.C.COLO.L.CivR 7.1, the parties conferred regarding this Motion and Plaintiff's counsel has advised that they oppose the relief sought herein.

---

[6] Plaintiff's allegations on "information and belief" are improper where a heightened pleading standard is required. *See Greenway Nutrients, Inc. v. Blackburn*, 2015 WL 1524941, at *11 (D. Colo. Feb. 23, 2015), report and recommendation adopted by 2015 WL 1539027 (D. Colo. Mar. 31, 2015) ("allegations on information and belief" require a good-faith basis and are not entitled to a presumption of truth absent other circumstantial or second-hand evidence).

DATED: July 27, 2021

**RESPECTFULLY SUBMITTED,**

*/s/ David S. Kerr*
David Stevens Kerr
Jon N. Banashek
**BERG HILL GREENLEAF & RUSCITTI LLP**
1712 Pearl Street
Boulder, CO 80302
Telephone: 303.402.1600
Facsimile: 303.402.1601
Email: dsk@bhgrlaw.com
         jnb@bhgrlaw.com

*Attorneys for Defendants*

### CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2021, I electronically transmitted the attached MOTION to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record and via email to:

Sharon A. Urias
**GREENSPOON MARDER LLP**
8585 E. Hartford Drive, Ste. 700
Scottsdale, AZ  85255
Email:  Sharon.urias@gmlaw.com

Jessica B. Sander
**GREENSPOON MARDER LLP**
200 E. Broward Boulevard, Ste. 1800
Fort Lauderdale, FL 33301
Email: Jessica.sander@gmlaw.com

*/s/ David S. Kerr*