IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-02532-PAB-STV

HAUSCHILD GMBH & CO. KG, a German company,

     Plaintiff,

v.

FLACKTEK, INC., a South Carolina corporation,
FLACKTEK MANUFACTURING, INC., a South Carolina corporation, and
FLACKTEK SPEEDMIXER, INC., a South Carolina corporation,

     Defendants.

---

**ORDER**

---

     This matter is before the Court on Defendants' Partial Motion to Dismiss Plaintiff's Second Amended Complaint [Docket No. 55]. Plaintiff responded to defendants' motion, Docket No. 58, and defendants replied. Docket No. 62. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367.

**I. BACKGROUND[1]**

     Plaintiff manufactures bladeless industrial mixers and has done so continuously in the United States and around the world since between 1997 and 1999 under the marks SPEEDMIXER and SPEEDMIXER DAC (the "SPEEDMIXER Marks") as well as under "Hauschild SpeedMixer" and "SpeedMixer German Engineering by Hauschild." Docket No. 51 at 3–4, ¶¶ 12, 14. Although plaintiff's marks are not registered with the

---

[1] The following facts, which are taken from plaintiff's Second Amended Complaint and Demand for Jury Trial, Docket No. 51, are presumed to be true for the purpose of resolving defendants' motion.

United States Patent and Trademark Office ("USPTO"), plaintiff owns registrations in the European Union for "Hauschild SpeedMixer" and "SpeedMixer German Engineering by Hauschild" and, as of the filing of this lawsuit, has an application pending in the European Union for SPEEDMIXER DAC.  *Id.* at 4, ¶ 13.

Plaintiff's SPEEDMIXER bladeless industrial mixers operate by combining opposite centrifugal forces, resulting in an "extremely efficient mixing process" that can rapidly "mix[], dispers[e], or grind[]" almost any material.  *Id.*, ¶ 14.  This process uses an "asymmetric centrifuge" that includes a "mixing cup that rests on a rotating arm."  *Id.* at 7, ¶ 32.  Plaintiff considers the rotating arm to be the "most critical component of the machine's technology, without which the machine could not function."  *Id.*

Each SPEEDMIXER is manufactured by hand in Germany, and each mixer and rotating arm component has one of plaintiff's serial numbers.  *Id.* at 4, ¶ 14.  Plaintiff markets its SPEEDMIXER machines via its website at speedmixer.de.  *Id.*, ¶ 16.

Plaintiff has been selling mixing machines since 1974 and began calling the machines by the SPEEDMIXER Mark between 1997 and 1999.  *Id.*, ¶¶ 18–19.  At that time, plaintiff also began using model names combining the term "SPEEDMIXER" with the abbreviation "DAC," which stands for "dual asymmetric centrifuge,"[2] followed by a number representing the maximum amount that the machine is able to mix.  *Id.*, ¶ 19.  For example a SPEEDMIXER DAC 150 can mix 150 grams of material.  *Id.*  Over the years, plaintiff has developed a reputation as having the "premier mixing solution

---

[2] The DAC rests on the rotating arm, which, plaintiff says, has never been reproduced by anyone else in the world, and is build to "exacting specifications."  *Id.* at 7, ¶¶ 32–34.

technology," resulting in "extensive goodwill in the marketplace." *Id.* at 5, ¶ 22.

In 1995 or 1996, Gerd Ulrich Schmidt ("Schmidt"), the founder of plaintiff and the inventor of the SPEEDMIXER machine, met Dale Flackett ("Flackett"), founder of FlackTek. *Id.*, ¶ 20. FlackTek was incorporated as FlackTek, Inc. ("FTI") on August 29, 1996. *Id.* Plaintiff and FTI began to work together to sell the machines. *Id.*, ¶ 21. Plaintiff would design and manufacture the machines and sell them to FTI, who would in turn sell the machines in the United States. *Id.* In 1998 or shortly thereafter, plaintiff developed a larger machine, the SPEEDMIXER DAC 400, which can mix 400 grams of material. *Id.*, ¶ 21.

In 2004, FTI started to use the website speedmixer.com to promote plaintiff's machines in the United States. *Id.*, ¶ 23. Although the parties had an unwritten agreement before then, in 2008, plaintiff and FTI entered into a Distribution Agreement, whereby plaintiff entrusted FTI with the exclusive distribution rights of the SPEEDMIXER DAC products and component parts in the United States and gave FTI an implied license to use the SPEEDMIXER Marks to sell SPEEDMIXER products on plaintiff's behalf. *Id.* at 5–6, ¶¶ 24–25; *id.* at 5 n.1. FTI agreed to keep plaintiff's trade secrets confidential, including after termination of the Distribution Agreement, and plaintiff agreed to provide repairs on the machines during a warranty period. *Id.* at 6, ¶¶ 26–27. Plaintiff also spent substantial time and resources training FTI's employees to assist with repairs. *Id.*, ¶ 28. All of plaintiff's SPEEDMIXER machines, which were "designed, assembled, tested, and commissioned" in Germany, were branded with plaintiff's logo and the SPEEDMIXER trademark and model number. *Id.* at 6–7,

¶¶ 29–30.  Plaintiff believes that, although the machines were all sent to FTI with plaintiff's label, FTI may have added the "FlackTek" name to some of the machines or to the packaging before sending the machines to end users.  *Id.* at 7, ¶ 31.

The parties continued to operate under the exclusive Distribution Agreement for several years.  *Id.*, ¶ 35.  However, plaintiff states that it learned that, in 2017 or 2018, Mr. Flackett began to steal plaintiff's technology in order to launch his own mixing machine, the "FlackTek SPEEDMIXER," by, among other things, drastically increasing and then sharply decreasing his orders from plaintiff, filing trademark applications, copying plaintiff's machines, and setting up his own manufacturing operations.  *Id.* at 7–8, ¶ 36.  Plaintiff believes that FTI increased and then decreased its orders to stockpile machines so that FTI could modify, sell, and/or harvest parts from plaintiff's machines after terminating its relationship with plaintiff.  *Id.* at 8, ¶ 37.  In May 2018, FTI filed trademark applications in the USPTO for the marks "FlackTek SpeedMixer," "FlackTekSpeedMixer," and "The FlackTek."  *Id.* at 8–9, ¶¶ 38–41.  In July 2020, FTI filed three additional applications for "ROBODAC," "DAC MIXER," and "THE DAC."  *Id.* at 9, ¶ 42.

In October 2018, Mr. Flackett formed FlackTek Manufacturing, Inc. ("FTM") as the manufacturing arm of its operations, despite the fact that FTI was still subject to the Distribution Agreement's prohibition on using plaintiff's business and trade secrets.  *Id.*, ¶ 43.  FTI also continued to place orders for machines from plaintiff, but failed to pay amounts due.  *Id.*, ¶ 44.  At the time, plaintiff was unaware of FTI's conduct.  *Id.* Plaintiff ultimately threatened to terminate the Distribution Agreement out of fear that

FTI would continue to not pay for machines, increasing the amount due. *Id.* FTI suggested terminating the current Distribution Agreement and entering into a new one. *Id.*, ¶ 45. On April 10, 2020, Mr. Flackett emailed plaintiff's CEO stating that he would agree to cancel the contract as of that day or May 1, 2020. *Id.*, ¶ 46. On April 10, FTI also filed its statement of use for the "FlackTek SpeedMixer" mark, claiming a first use date of March 2020, even though the Distribution Agreement was still in effect in March. *Id.* at 11–12, ¶ 58. The FlackTek SpeedMixer was registered on July 7, 2020. *Id.* at 12, ¶ 60.

On May 10, 2020, plaintiff and FTI entered into a Termination Agreement, ending the Distribution Agreement, and agreeing to the "continuing obligation of confidentiality with regard to all confidential or proprietary matters that FlackTek may have learned during [the] contractual relationship" and to "protect and not use such confidential information in any way." *Id.* at 10, ¶¶ 47–48. The agreement also released FTI from its $600,000 balance with plaintiff and ended FTI's implied license to use the SPEEDMIXER Marks. *Id.* at 11, ¶¶ 52–53. Despite these obligations, FTI has continued to use the SPEEDMIXER Marks without plaintiff's permission to market and sell its machines, which are derived from plaintiff's technology, in direct competition with plaintiff, and FTI has. *Id.* at 10–11, ¶¶ 50–51, 54. FTI also continues to sell plaintiff's machines with the SPEEDMIXER Marks – and use the speedmixer.com domain name – even though it is no longer an authorized distributor. *Id.* at 11, ¶¶ 55–57.

On June 11, 2020, plaintiff's counsel sent FTI a cease and desist letter, demanding that, by June 19, 2020, FlackTek (i) withdraw all USPTO applications; (ii)

file name-change applications; (iii) cancel any tradename or trademark registrations incorporating SPEEDMIXER; (iv) provide plaintiff an inventory of unsold SPEEDMIXER products, an accounting of all products sold, an accounting of all machines sold under SPEEDMIXER since May 10, 2020, and the immediate payment of royalties to plaintiff for all such sales; (v) cease use of the SPEEDMIXER mark, (vi) cease mis-representing FlackTek as being affiliated with plaintiff, and (vii) cease all other use of plaintiff's SPEEDMIXER mark or any variation of the mark. *Id.* at 12–13, ¶ 61. If FlackTek agreed to the terms, plaintiff would offer FlackTek a 60-day phase-out period. *Id.* at 13, ¶ 62. Although defendants disagreed with plaintiff's position regarding ownership of the SPEEDMIXER Mark, defendants made significant changes to their website and removed references to plaintiff and evidence of plaintiff's ownership of the SPEEDMIXER Marks. *Id.*, ¶¶ 63–65.

However, defendants' website now displays photos of machines with the SPEEDMIXER Marks and the FlackTek logo with false claims that SPEEDMIXER machines are made in the United States and "hand-built in the Rockies," rather than in Germany, and that FlackTek has been "creating mixing solutions since 1996" and has decades of experience and knowledge, even though FlackTek did not invent the SPEEDMIXER and all of its knowledge came from plaintiff's proprietary and confidential information. *Id.* at 14, ¶¶ 67–69. In addition, defendants have modified plaintiff's SPEEDMIXER machines and have been selling them with fake model names, yet still displaying plaintiff's name, logo, address, and a fake "CE" European Union certification mark. *Id.*, ¶ 70. For instance, one of defendants' machines has the names "Hauschild Engineering" and "SPEEDMIXER" yet has a model number "DAC 1100.1 FVZ-LV,"

even though plaintiff does not sell such a model, which leads plaintiff to believe that defendants have replaced plaintiff's labels with fake ones and are manufacturing machines that look identical or confusingly similar in appearance to plaintiff's SPEEDMIXER machines. *Id.* at 15, ¶¶ 73–75. Plaintiff also has learned that defendants have been installing proprietary parts from plaintiff's machines into defendants', including the rotating arm, without removing plaintiff's serial numbers, thereby falsely representing that plaintiff has authorized the use of its parts in FlackTek machines and passing off the machines as FTI's own. *Id.*, ¶¶ 76–77. Defendants have done so even though they do not have the skill, knowledge, or expertise to install the rotating arm properly, and they have modified the rotating arm's attachment mechanism, which makes the rotating arm unable to be securely installed and creates a high risk of serious injury to users and damage to plaintiff's reputation. *Id.* at 15–16, ¶¶ 78–80.

Plaintiff brings the following claims for relief:[3] Under 15 U.S.C. § 1125(a) and against all defendants, plaintiff claims (1) trademark infringement, (2) false designation of origin and unfair competition, (3) false advertising, (4) trade dress infringement, (5) passing off, and (6) reverse passing off. Plaintiff also brings claims against all defendants for (7) common law unfair competition, (8) declaratory judgment of superior trademark rights, (9) misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA") 18 U.S.C. §§ 1832, *et seq.*, (13) accounting, and (14) deceptive trade practices in violation of the Colorado Consumer Protection Act ("CCPA"), Colo. Rev.

---

[3] The Court adopts the numbering of plaintiff's claims from the complaint.

Stat. § 6-1-105(1).  Finally, plaintiff brings common-law claims against FTI only for (10) fraud, (11) rescission of contract for the termination agreement or, alternatively, (12) breach of contract for the Distribution Agreement.  *Id.* at 17–35, ¶¶ 82–199.

Defendants' partial motion to dismiss argues that plaintiff has failed to plead a claim for trade dress infringement, misappropriation of trade secrets, a violation of the CCPA, or for unfair competition, fraud, or breach of contract.  *See* Docket No. 55.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible."  *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)).  Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted).  However, a plaintiff still must provide "supporting factual averments" with its allegations.  *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." (citation omitted)).  Otherwise, the Court need not accept conclusory allegations.  *Moffet v. Halliburton*

*Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).   If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted).   Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."   *Bryson*, 534 F.3d at 1286 (alterations omitted).

## III.  ANALYSIS

Defendants argue that plaintiff fails to state a claim for trade dress infringement, misappropriation of trade secrets, violation of the CCPA, or common law unfair competition, fraud, and breach of contract.   *See* Docket No. 55 at 2–11.

### A.  Trade Dress Infringement

Plaintiff's trade dress infringement claim asserts that defendants have been selling SPEEDMIXER machines that look confusingly similar or identical to plaintiff's machines in their shape, size, color, and appearance.   Docket No. 51 at 20–21, ¶¶ 106–11.

Section 43(a) of the Lanham Act provides a federal cause of action for trade dress infringement.  *See* 15 U.S.C. § 1125(a).  The term "trade dress" refers to the overall appearance of a product.  *Hartford House, Ltd. v. Hallmark Cards, Inc.*, 846 F.2d 1268, 1271 (10th Cir. 1988).  "[T]rade dress may be a composite of several features in a certain arrangement or combination which produces an overall distinctive appearance."  *Id.* at 1272.  Trade dress "may include features such as size, shape, color or color combinations, texture, graphics, and even particular sales techniques." *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 977 (10th Cir. 2002).  "Under § 43(a) of the Lanham Act, a plaintiff has a cause of action against any person whose use of a word, symbol or device is likely to cause confusion regarding the source or origin of the plaintiff's goods."  *Id.* (citing 15 U.S.C. § 1125(a)(1)(A); *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 209 (2000)).  Protection may extend to a single feature or a combination of features in a trade dress.  *See Vornado Air Circulation Sys., Inc. v. Duracraft Corp.*, 58 F.3d 1498, 1502 (10th Cir. 1995).  To state a trade dress infringement claim, a plaintiff must plausibly allege: "(1) [t]he trade dress is inherently distinctive or has become distinctive through secondary meaning; (2) [t]here is a likelihood of confusion among consumers as to the source of the competing products; and (3) [t]he trade dress is nonfunctional."  *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1227 (10th Cir. 2007) (citations omitted).

Defendants first argue that plaintiff's trade dress claim should be dismissed because plaintiff fails to identify any protectable trade dress or the allegedly infringing product.  Docket No. 55 at 2–4.  Although defendants make this argument separately

from their arguments regarding the elements of plaintiff's trade dress infringement claim, the Court finds that the argument is more appropriately addressed in the Court's consideration of whether plaintiff has plausibly alleged that its trade dress is inherently distinctive.

### 1. Inherently Distinctive

Defendants argue that plaintiff has failed to allege that its machines are inherently distinctive.  Docket No. 55 at 5.  A trade dress is inherently distinctive if its "intrinsic nature serves to identify a particular source."  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).  Trade dresses "almost *automatically* tell a customer they refer to a brand and immediately signal a brand or a product source."  *Sally Beauty Co.*, 304 F.3d at 977 (quoting *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 212–13 (2000)).  Marks that are inherently distinctive include those which are suggestive, arbitrary, or fanciful.  *Two Pesos*, 505 U.S. at 768.  Marks which are merely descriptive are not inherently distinctive.  *Id.* at 769.

First, defendants argue that, although plaintiff alleges that defendants' machines are "confusingly similar or identical in appearance" to the SPEEDMIXER, including in their "shape, size, color[,] and appearance," *see* Docket No. 51 at 20, ¶ 107, plaintiff's complaint mentions six separate mixing machines that each have a different shape, size, color, and appearance, yet plaintiff has not specified what the shape, size, color, and appearance are or how these characteristics are incorporated into which of defendants' machines.  Docket No. 55 at 2–3.  Moreover, while the complaint includes a photograph of plaintiff's mixer, *see, e.g.*, Docket No. 51 at 6, defendants contend that,

because the photograph is not marked or annotated to identify the trade dress with specificity, plaintiff's allegations are insufficient.  Docket No. 55 at 3.

Plaintiff responds that, at the motion to dismiss stage, it may rely on "lingual and pictorial allegations in the complaint" because a plaintiff need only set forth facts that, if true, could establish a plausible claim, since the pleading stage is simply to put defendants on notice of the claims against them.  Docket No. 58 at 4–5.

At the motion to dismiss stage, a plaintiff must plausibly allege facts which, if proven, would constitute circumstantial evidence of inherent distinctiveness.  *No Spill, Inc. v. Scepter Canada, Inc.*, 429 F. Supp. 3d 768, 784 (D. Kan. 2019).  Plaintiff relies on *Jenny Yoo Collection, Inc. v. Essense of Australia, Inc.*, 2019 WL 2717167, at *6 (D. Kan. June 28, 2019), where the court explained that plaintiff's burden at the motion to dismiss stage is to put the defendant on notice and that "there [i]s no requirement that the plaintiff plead its trade dress with further specificity."  *Id.* (quoting *Dayco Prods., LLC v. Dorman Prods., Inc.*, 2019 WL 2717167, at *5 (E.D. Mich. Sept. 28, 2010)).  In both *Jenny Yoo* and *Dayco Products*, which *Jenny Yoo* relied on, the plaintiffs provided more detailed factual allegations to identify the relevant trade dress.  For instance, in *Jenny Yoo*, which involved allegedly infringing clothing, the plaintiff alleged the "distinct components of its trade dress, explaining" that its dresses "are made of lightweight material with (i) a strapless upper garment (bodice) portion with a sweetheart neckline covering an area above the waist of the user having a front and rear portion; (ii) a skirt having a front and rear portion attached to the upper garment (bodice); and (iii) two front panels and two rear panels that overlay the full length of the skirt ending just

12

above the bottom hemline." 2019 WL 2717167, at *6. By comparison, defendants are correct that plaintiff here does not describe its trade dress or what part of defendants' machines allegedly infringe plaintiff's trade dress. *Jenny Yoo* highlighted that the plaintiff's "visual depictions of the alleged trade dress" placed the defendant on notice of the trade dress "when combined with identification and visuals of the alleged infringing products." *Id.* Plaintiff here provides 22 screen shots of defendants' website, *see* Docket No. 51-7, yet plaintiff does not describe defendants' allegedly infringing products beyond alleging that such products are identical or confusingly similar including in their shape, size, appearance, and color. Docket No. 51 at 15, 20, ¶¶ 75, 107.

*Dayco Products* is no more helpful for plaintiff. In that case, the plaintiff alleged that the defendant had infringed on the plaintiff's entire line of products, automatic belt tensioners used in automotive parts. 2010 WL 3855221, at *3. The court noted that "[a] plaintiff, seeking protection for a series or line of products, must first demonstrate that the series or line has a recognizable and consistent overall look." *Id.* (quoting *Rose Art Indus., Inc. v. Swanson*, 235 F.3d 165, 173 (3d Cir. 2000)). Here, plaintiff claims that defendants have infringed on the entire SPEEDMIXER line, yet plaintiff has not alleged that various SPEEDMIXERs have a "recognizable and consistent overall look." The plaintiff in *Dayco Products* provided photographs of "each Dayco automatic belt tensioner adjacent to the corresponding [defendant] tensioner, and the corresponding non-infringing third-party tensioner," which the court found sufficient. *Id.* at *4. Plaintiff has not compared its products with defendants' products. Plaintiff's reliance on *Jenny*

13

*Yoo* and *Dayco*, therefore, is misplaced.[4]

Plaintiff also argues it has met its pleading burden because defendants, as the former exclusive distributor of plaintiff's machines for 20 years, are "intimately familiar" with the "shapes, sizes, colors, and appearance" of plaintiff's machines.  Docket No. 58 at 4–5.  But an alleged trademark infringer's familiarity with a plaintiff's mark does not relieve the plaintiff of its pleading burden under *Iqbal*.  Thus, although it is true that plaintiff need not prove its case at this stage of the litigation and that plaintiff must only articulate "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *see Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570), a plaintiff must still "articulate the elements of [its] product design with specificity to be afforded trade dress protection."  *GeigTech E. Bay LLC v. Lutron Elecs. Co.*, 352 F. Supp. 3d 265, 275–76 (S.D.N.Y. 2018) (quoting *Urban Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, 2012 WL 3240442, at *4 (S.D.N.Y. Aug. 7, 2012)).  "[A] plaintiff's inability to explain to a court exactly which aspects of its product design[] merit[s] protection may indicate that its claim is pitched at an improper level of generality, i.e., the claimant seeks protection for an unprotectable style, theme or idea." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997) ("focus on the overall look of a product does not permit a plaintiff to dispense with an articulation of the specific elements which comprise its distinct dress."); *see also*

---

[4] Plaintiff also relies on *Bobrick Washroom Equip., Inc. v. Am. Specialties Inc.*, 2010 WL 11462854, at *2 (C.D. Cal. Dec. 15, 2010); however, in that case, the plaintiff described the trade dress as "covering washroom accessories that have a 'convex front face when viewed from above'" and provided its registration statement as well as pictures of its products.  *Id.*  Plaintiff here provided a picture of one product and no description of its purported trade dress.

*GeigTech*, 352 F. Supp. 3d at 276 ("A trade dress infringement claimant must enumerate which features of its purported dress are distinctive and indicate how they are distinctive.").  This is the rule in this District and elsewhere.  *See, e.g.*, *Stouffer v. Nat'l Geographic Partners, LLC*, 400 F. Supp. 3d 1161, 1184 (D. Colo. 2019) (dismissing trade dress claim regarding packaging because complaint failed to state a plausible claim); *MDM Grp. Assocs., Inc. v. ResortQuest Int'l, Inc.*, No. 06-cv-01518-PSF-KLM, 2007 WL 2909408, at *8 (D. Colo. Oct. 1, 2007) (dismissing plaintiff's complaint, in part, because it contained "no allegations concerning the distinctive nature of its brochure for purposes of trade dress infringement"); *TV Ears, Inc. v. Joyshiya Dev. Ltd.*, 2021 WL 5396111, at *12 (S.D. Cal. Nov. 18, 2021) (granting motion to dismiss trade dress infringement claim because plaintiff did not "clearly articulate the discrete elements of its product that constitute the trade dress"); *Rosenshine v. A. Meshi Cosms. Indus. Ltd.*, 2021 WL 4487840, at *4 (E.D.N.Y. Sept. 30, 2021) (rejecting argument that a trade dress claim cannot be dismissed on a motion to dismiss and dismissing claim because plaintiff failed to describe its trade dress with "any such precision"); *AJB Enterprises, LLC v. BackJoy Orthotics, LLC*, 2017 WL 4400746, at *4 (D. Conn. Sept. 29, 2017) ("the key deficiency of the original pleadings was AJB's failure to include allegations regarding the distinctiveness of its claimed trade dress"); *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 347 (E.D.N.Y. 2014) (in order to survive dismissal of a trade dress infringement claim, "the plaintiff must provide a description of which of plaintiff's trade dress design elements are distinctive and how they are distinctive"); *Kremerman v. Open Source Steel, LLC*, 2017

15

WL 3970894, at *4 (W.D. Wash. Sept. 8, 2017) (plaintiff "must still allege the concrete elements of his alleged trade dress to survive a Rule 12(b)(6) motion to dismiss").

The Court finds that plaintiff has failed to allege an inherently distinctive trade dress. Plaintiff claims that defendants have infringed on the shape, size, color, and appearance of plaintiff's machines, yet plaintiff does not allege any consistent shape, pattern, or design of its machines, logo, color, size, or anything else.

### 2. Secondary Meaning

Assuming the trade dress of the machine pictured in the complaint, *see* Docket No. 51 at 6, ¶ 29, is not inherently distinctive, defendants argue that plaintiff also fails to allege that the trade dress of its machines is distinctive because it has acquired secondary meaning. Docket No. 55 at 4–5. To plead secondary meaning, a trade dress owner must allege that, over time, customers associate the primary significance of a trade dress feature with the source of the product rather than the product itself. *See Qualitex Co. v. Jacobson Prods. Co.,* 514 U.S. 159, 163 (1995); *Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1154 (10th Cir. 2013). Essentially, a plaintiff must "allege[] facts that, if proved, would constitute circumstantial evidence," *No Spill*, 429 F. Supp. 3d at 785, that, in the consumer's mind, a particular trade dress indicates a "single thing coming from a single source." *Sally Beauty Co.*, 304 F.3d at 978. A plaintiff may allege, for example, (1) the length and manner of the trade dress's use; (2) the nature and extent of the advertising and promotion of the trade dress; and (3) the efforts made in the direction of promoting a conscious connection in the public's mind between the trade dress and a particular product. *See Forney Indus., Inc. v. Daco of*

*Missouri, Inc.*, 835 F.3d 1238, 1253 (10th Cir. 2016); *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1218 (10th Cir. 2004).

Plaintiff argues that secondary meaning is a question of fact to be resolved by the jury. Docket No. 58 at 6–7 (citing *Craft Smith, LLC v. EC Design, LLC*, 969 F.3d 1092, 1107 (10th Cir. 2020) ("Whether a trade dress has acquired secondary meaning is a question of fact and thus *generally* should not be decided at the summary judgment stage.")). While it is true that the ultimate determination of whether trade dress has acquired a secondary meaning should be resolved by the trier of fact, a plaintiff must still plausibly allege facts that, if proven, would establish secondary meaning. *See No Spill*, 429 F. Supp. 3d at 784–85. Plaintiff has not alleged facts that, if proven, would constitute circumstantial evidence of secondary meaning.

As to the first category of evidence, the length and manner of its use of its trade dress, plaintiff alleges that it has manufactured mixers since 1974 and began using the SPEEDMIXER Marks in 1997 or 1999, *see* Docket No. 51 at 4, ¶¶ 17–19, yet, as discussed previously, plaintiff provides no allegations about these mixers' trade dress, what the machines looked like over the years, or whether there was any consistency in the shape, size, color, and appearance of the machines such that customers would associate a particular trade dress with a "single thing coming from a single source." *See Sally Beauty Co.*, 304 F.3d at 978. Plaintiff alleges that it is the exclusive owner of the marks and that it has a reputation for quality. *See* Docket No. 51 at 3–5, ¶¶ 12, 22. These allegations, however, also do not identify plaintiff's trade dress or what consumers may associate with plaintiff's trade dress. Plaintiff provides a photograph of

its machine, *id.* at 6, ¶ 29, but again fails to allege that the shape, size, color, or appearance of the machine would lead customers to make a conscious connection between the trade dress and the particular product.  *See Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1148 (10th Cir. 2016).  Although plaintiff alleges that its rotating arm is unique and associated with the SPEEDMIXER products, plaintiff does not describe the machines beyond being a "dual asymmetric centrifuge mechanism includes a mixing cup that rests on a rotating arm."  Docket No. 51 at 7, ¶¶ 32–34.  And it is not clear that the rotating arm is visible or causes consumers to associate machines with a rotating arm as a "single thing coming from a single source."  *See Sally Beauty Co.*, 304 F.3d at 978.  Finally, plaintiff's allegation that its machines are "known as *the* premier industrial mixers, and [plaintiff] has many international customers . . . that depend on the quality of [its] SPEEDMIXER machines," Docket No. 51 at 16, ¶ 81, does not establish that plaintiff's reputation is tied to its trade dress.  *See, e.g.*, *WaterPik, Inc.*, 726 F.3d at 1154–55 ("Evidence that its products had millions of users and that its products were sold through well-known retailers does not tell us whether the sales were stimulated by the mark.").

As to the second category, the nature and extent of advertising and promotion of the trade dress, plaintiff provides no allegations about its advertising efforts before or during its relationship with defendants.  Plaintiff does allege that defendants advertised their own and plaintiff's products under plaintiff's SPEEDMIXER Marks, but this is not sufficient for secondary meaning because plaintiff does not allege that the SPEEDMIXER products acquired "secondary meaning based on advertising," as there are no allegations that "the advertising [was] of a nature and extent to create an

association [of the trade dress] with [plaintiff's] goods." *Forney*, 835 F.3d at 1254

(quoting *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1146 (9th Cir. 2009);

citing 1 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 8:8 (4th

ed.) ("[S]econdary meaning cannot usually be proven by advertising that merely

pictures the claimed trade dress and does nothing to emphasize it or call attention to

it.")).

   Finally, there are no allegations that plaintiff made efforts to promote a conscious

connection in the public's mind between its trade dress and its mixers.  *See Donchez*,

392 F.3d at 1218; *Forney*, 835 F.3d at 1253.  Again, although plaintiff alleges that it is

the exclusive owner of the SPEEDMIXER Marks, *see* Docket No. 51 at 3–4, ¶ 12, that

no one else has reproduced the rotating arm, *see id.* at 7, ¶ 34, and that it has a

worldwide reputation, *see id.* at 16, ¶ 81, there are no allegations that plaintiff's trade

dress has "been used so long and so exclusively by one producer with reference to his

goods or articles that, in the trade and to that branch of the purchasing public, the trade

dress has come to mean that the article is his product."  *See Savant Homes*, 809 F.3d

at 1148 (brackets omitted).  The Court therefore finds that plaintiff has failed to

plausibly allege that its mark has acquired distinctiveness through secondary meaning.

*See id.* at 1147; *Craft Smith*, 969 F.3d at 1107 (citing *Vornado*, 58 F.3d at 1502

(secondary meaning exists when the trade dress's "*primary significance* in the minds of

potential consumers is no longer as an indicator of something about the product itself

but as an indicator of its source or brand.")).

### B.  Misappropriation of Trade Secrets

Plaintiff brings a claim for misappropriation of trade secrets under the DTSA. Docket No. 51 at 27–29, ¶¶ 145–159.  Plaintiff alleges that, since it began manufacturing the SPEEDMIXER, it "has developed and engineered the machines and technology[] and has established relationships with a wide variety of vendors and customers."  *Id.* at 27, ¶ 146.  It defines these relationships as "trade secrets," *id.*, and alleges that its trade secrets include "confidential information regarding potential or actual [] customers and vendors and information regarding [its] processes and technology," which it says "represent technical, business[,] financial information, including formulas, methods, techniques, processes[,] and procedures."  *Id.*, ¶ 147. Defendants argue that plaintiff has failed to state a claim for misappropriation of trade secrets because plaintiff's trade-secret claims are not pled with specificity, plaintiff's machines do not constitute a protectable trade secret, and any trade secrets regarding plaintiff's machines have been abandoned.  Docket No. 55 at 6–10.

A plaintiff asserting a claim for misappropriation of trade secrets under the DTSA must establish: "(1) the existence of a trade secret that relates to a product or service used in, or intended for use in, interstate or foreign commerce; (2) the acquisition of the trade secret, or the use or disclosure of the trade secret without consent; and (3) the person acquiring, using, or disclosing the trade secret knew or had reason to know that the trade secret was acquired by improper means."  *zvelo, Inc. v. Akamai Techs., Inc.*, No. 19-cv-00097-PAB-SKC, 2019 WL 4751809, at *2 (D. Colo. Sept. 30, 2019) (quoting *Arctic Energy Servs., LLC v. Neal*, No. 18-cv-00108-PAB-KLM, 2018 WL 1010939, at

*2 (D. Colo. Feb. 22, 2018)).  DTSA defines "trade secret" broadly to include "all forms and types of financial, business, scientific, technical, economic, or engineering information" so long as "the owner thereof has taken reasonable measures to keep such information secret" and "the information derives independent economic value, actual or potential, from not being generally known to," or ascertainable by, another person.  18 U.S.C. § 1839(3).

Defendants argue that plaintiff has failed to allege a protectable trade secret. Docket No. 55 at 6–8.  More specifically, defendants argue that, although plaintiff claims that its "information regarding potential and actual [] customers and vendors" and "information regarding [its] processes and technology" are trade secrets, plaintiff does not define "processes" or "technology" or explain which processes and technologies have been misappropriated.  *Id.* at 7.  And, as to plaintiff's vendor and customer information, defendants argue that FTI, as plaintiff's exclusive distributor, generated plaintiff's customer lists and that this information is not a trade secret because plaintiff lists its customers and vendors on its website.  *Id.*

Although dismissals in "cases rejecting trade secret claims for lack of specificity [] predominantly [take place] at later stages in the litigation process," *see SBM Site Servs., LLC v. Garrett*, No. 10-cv-00385-WJM-BNB, 2012 WL 628619, at *10 (D. Colo. Feb. 27, 2012); *see also Marsh USA, Inc. v. Cobbs Allen Cap., LLC*, No. 19-cv-03266-RM-STV, 2020 WL 9424331, at *4 (D. Colo. Aug. 19, 2020), plaintiff's allegation that its trade secrets are "information regarding potential and actual [] customers and vendors" and "information regarding [plaintiff's] processes and technology," *see* Docket No. 51 at

27, ¶ 147, are not well-pled because plaintiff provides no description of the sort of information that defendants allegedly misappropriated.

At the motion to dismiss stage, a plaintiff need not identify the specific documents or records that were allegedly misappropriated, *see, e.g.*, *Select Energy Servs., Inc. v. Mammoth Energy Servs., Inc.*, 2019 WL 1434586, at *5 (W.D. Okla. Mar. 29, 2019) (collecting cases), or establish that a particular category of information is, in fact, a trade secret.  *See, e.g.*, *JCorps Int'l, Inc. v. Charles & Lynn Schusterman Fam. Found.*, 2021 WL 2371233, at *5 (N.D. Okla. June 9, 2021).  Nevertheless, to overcome a motion to dismiss, a plaintiff "alleging misappropriation of a trade secret" must plausibly allege "'the specific types of confidential information . . . with sufficient particularity to identify the existence of its claimed trade secrets.'"  *Int'l Acad. of Bus. & Fin. Mgmt., Ltd. v. Mentz*, No. 12-cv-00463-CMA-BNB, 2013 WL 212640, at *9 (D. Colo. Jan. 18, 2013) (granting motion to dismiss Colorado Uniform Trade Secret Act, which has similar pleading requirements as the DTSA) (quoting *Saturn Sys., Inc. v. Militare*, 252 P.3d 516, 522 (Colo. App. 2011) (same)); *see also Animal Care Sys., Inc. v. Hydropac/Lab Prod., Inc.*, No. 13-cv-00143-MSK-BNB, 2015 WL 1469513, at *5 (D. Colo. Mar. 26, 2015) (on motion to dismiss, plaintiff "must explain, with sufficient particularity, the information allegedly misappropriated that constitutes a cognizable trade secret; otherwise, [defendant] cannot adequately prepare its defense.").

Courts in this District have found that identifying the categories of documents allegedly misappropriated, without listing the file names, for instance, is sufficient to identify trade secret information.  *See Marsh*, 2020 WL 9424331, at *4; *SBM*, 2012 WL

628619, at *10 (finding plaintiff's identification of documents such as strategic plans, historical bid information, and customer-specific sales power points sufficient to withstand dismissal).  Thus, although plaintiff need not identify the specific file names or documents that defendants allegedly misappropriated, plaintiff must still identify the trade secrets with enough specificity to put defendants on notice.  The cases that apply what plaintiff considers to be a relaxed pleading standard do not undercut this rule. *See, e.g.*, *Wells Lamont Indus. Grp. LLC v. Richard Mendoza & Radians, Inc.*, 2017 WL 3235682, at *3 (N.D. Ill. July 31, 2017) (plaintiff identifying "customer account information, product summaries, pricing sheets, product prototypes, product designs, and detailed sales reports" as trade secrets was sufficient at motion to dismiss stage); *Aggreko, LLC v. Barreto*, 2017 WL 963170, at *2 (D.N.D. Mar. 13, 2017) (holding that a complaint's allegations were adequate in describing trade secrets as "including customer lists and information regarding [the plaintiff's] operations, customers, business proposals, pricing strategy, client preference and history, and proprietary pricing models"); *Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F. Supp. 3d 915, 920–21 (N.D. Ill. 2016) (holding that a complaint was well-pled when it identified the purported trade secrets as including "business models, . . . business plans, and product development plans"); *Synthes, Inc. v. Emerge Med., Inc.*, 2012 WL 4205476, at *28 (E.D. Pa. Sept.19, 2012) (alleged trade secrets included "information about Synthes' customers, business activities, and strategies as well as information regarding Synthes' product development plans, pipeline, and launches; technology and product performance; expansion plans; pricing; competitive terms; contract and sales administration; compensation and personnel; and other sensitive information related to

23

Synthes' business").  Plaintiff's allegations are less detailed than those in any of these cases, and the insufficiency of plaintiff's allegations is made apparent when contrasted with instances of allegations of a plausible DTSA claim.  *See, e.g.*, *Wright Med. Tech. v. Paragon 28, Inc.*, No. 18-cv-00691-PAB-STV, 2019 WL 4751807, at *3 (D. Colo. Sept. 30, 2019) (allegations of "[p]roduct cost and pricing information, including pricing strategies, . . . customer demand and purchasing information, and the terms of customer and supplier contracts" sufficiently identified the trade secrets).

Ultimately, the Court finds plaintiff's allegations do not plausibly establish a cognizable trade secret.  Moreover, although the Court assumes plaintiff's allegations are true at the motion to dismiss stage, plaintiff's allegations are inconsistent and inconclusive.  For instance, as to plaintiff's claim that "information regarding potential and actual [] customers and vendors" is a trade secret, it is not clear whether plaintiff is referring to customer and vendor lists, preferences, order histories, pricing strategies, terms of contracts, or something else.  Similarly, plaintiff provides no indication what sort of "information regarding [its] processes and technology" are trade secrets.  Plaintiff apparently does not intend to include the rotating arm, *see* Docket No. 58 at 11, but it is not clear if "processes and technology" pertains to distribution, manufacturing, shipping, design, approval, or something else.

Because plaintiff has not plausibly identified the existence of a trade secret, the Court will grant defendants' motion to dismiss this claim and will decline to consider the parties' arguments on the remaining elements, namely, defendants' alleged acquisition or use of the trade secrets or whether defendants knew that the alleged trade secrets were confidential.  *See zvelo*, 2019 WL 4751809, at *2.

### C.  Colorado Consumer Protection Act

Plaintiff brings a CCPA claim against defendants.  Docket No. 51 at 33–35,
¶¶ 186–199.  Defendants argue that plaintiff's CCPA claim should be dismissed
because plaintiff has failed to plead the claim with particularity or plead an actionable
public impact.  Docket No. 55 at 10–12.  A CCPA claim consists of the following
elements: "(1) that the defendant engaged in an unfair or deceptive trade practice; (2)
that the challenged practice occurred in the course of defendant's business, vocation,
or occupation; (3) that it significantly impacts the public as actual or potential
consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered
injury in fact to a legally protected interest; and (5) that the challenged practice caused
the plaintiff's injury."  *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62
P.3d 142, 146–47 (Colo. 2003).  All elements of a CCPA claim must be pled; otherwise,
the claim falls as a matter of law.  *HealthONE of Denver, Inc. v. UnitedHealth Grp., Inc.*,
805 F. Supp. 2d 1115, 1120 (D. Colo. 2011).  CCPA claims must be pled with
particularity pursuant to Federal Rule of Civil Procedure 9(b).  *See, e.g.*, *Mayhew v.
Cherry Creek Mortg. Co.*, No. 09-cv-00219-PAB-CBS, 2010 WL 935674, at *14 (D.
Colo. Mar. 10, 2010) (citing *Duran v. Clover Club Foods Co.*, 616 F. Supp. 790, 793 (D.
Colo. 1985) (holding that "allegations of deceptive trade practices under the [CCPA] are
subject to Rule 9(b)'s requirement of particularity")).  Rule 9(b) "requires a complaint to
'set forth the time, place and contents of the false representation, the identity of the
party making the false statements and the consequences thereof.'"  *HealthONE*, 805 F.
Supp. 2d at 1121 (citing *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir.

2000)).

Defendants argue that plaintiff has not sufficiently identified what actions, if any, each defendant allegedly took in violation of the CCPA.  Docket No. 55 at 10–11. Under the CCPA, a defendant engages in an unfair or deceptive trade practice when it, among other things, "knowingly or recklessly makes a false representation as to the source, sponsorship, approval, or certification of goods, services, or property; [or] knowingly or recklessly makes a false representation as to affiliation, connection, or association with or certification by another."  Colo. Rev. Stat. § 6-1-105.

Plaintiff alleges that defendants have falsely represented the source, sponsorship, or approval of defendants' products and defendants' affiliation with plaintiff.  Docket No. 51 at 33, ¶ 187.  Specifically, plaintiff alleges that defendants have modified the SPEEDMIXER machines, in particular the rotating arm; have affixed fake labels to defendants' machines, falsely representing that the machines are plaintiff's and that the machines have been certified under European Union standards; and have installed plaintiff's rotating arm in defendants' machines, which "could be dangerous" to users.  *Id.* at 33–34, ¶¶ 188–91.  Plaintiff alleges that defendants have knowingly or recklessly passed off defendants' goods as plaintiff's.  *Id.* at 34–35, ¶¶ 192–96. Elsewhere in the complaint, plaintiff identifies allegedly misleading trademark applications, which plaintiff alleges defendants filed on May 9 and 17, 2018 and July 20, 2020, *id.* at 8–9, ¶¶ 38–42, and that defendants have advertised the allegedly infringing machines on the speedmixer.com website.  *Id.* at 11, ¶¶ 55–57.

Defendants argue that plaintiff has not pled its CCPA claim with particularity pursuant to Rule 9(b).  Docket No. 55 at 10–11.  Defendants rely principally on *Gen.*

*Steel Domestic Sales, LLC v. Chumley*, No. 10-cv-01398-PAB-KLM, 2011 WL 2415167, at *4 (D. Colo. June 10, 2011), in which this Court dismissed the plaintiff's CCPA claim because the plaintiff "fail[ed] to identify who made the statements[,] where they [were] made[, or] the date of any statement."  Other courts also apply Rule 9(b) to CCPA claims.  *See, e.g.*, *Pertile v. Gen. Motors, LLC*, No. 15-cv-0518-WJM-NYW, 2017 WL 4237870, at *8 (D. Colo. Sept. 22, 2017) (explaining that "decisions in this District Court have consistently held that CCPA claims must be pled with the particularity required of fraud claims under Rule 9(b)," which requires a plaintiff to "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof" (citation omitted)); *Allbrandt v. Bank of Am., N.A.*, No. 14-cv-01977-CMA-KMT, 2015 WL 1186660, at *4 n.7 (D. Colo. Mar. 12, 2015) (applying Rule 9(b) to CCPA claim).  Plaintiff has not identified specifically who misrepresented the source, sponsorship, or approval of defendants' products and defendants' affiliation with plaintiff, or when they did so.  *See* Docket No. 51 at 33, ¶ 187.  Plaintiff has also not pled with particularity who modified plaintiff's machines, affixed fake labels to defendants' machines, or installed plaintiff's rotating arm into defendants' machines, or when they did so.  *See id.* at 33–34, ¶¶ 188–91.  The Tenth Circuit has found insufficient allegations that "fail[] to identify any specific [d]efendant who made the[] alleged fraudulent misrepresentations or omissions, a particularly important requirement in this case because of the number of individual defendants involved."  *Koch*, 203 F.3d at 1237.  Plaintiff also has not alleged when defendants applied the fake labels to the machines, modified the rotating arms, installed the

27

rotating arms in defendants' machines, or misused the speedmixer.com website.

Plaintiff, therefore, has not alleged "a sufficiently precise time frame to satisfy Rule

9(b)." *Id.* (finding in sufficient allegation that misrepresentations were made "during

1982 and continuing to the present time").  Moreover, plaintiff has not pled where the

fake labels were applied, where the rotating arms were removed from plaintiff's

machines and installed in defendants' machines, or where defendants used the

speedmixer.com website improperly.  Plaintiff, therefore, fails to "mention at all the

place at which any misrepresentations were made." *Id.*  The Court thus finds that

plaintiff has not "set forth the time, place and contents of the false representation, the

identity of the party making the false statements[,] and the consequences thereof." *Id.*

at 1236 (quoting *Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180

(10th Cir. 1991)).  Plaintiff has not pled its CCPA claim with particularity, even though

fake labels that misrepresent the "source, sponsorship, approval, or certification of

goods," or "knowingly or recklessly make[] a false representation as to affiliation,

connection, or association" of defendants machines may constitute deceptive practices

within the scope of the CCPA, *see* Colo. Rev. Stat. § 6-1-105, and even though such

"misrepresentations were directed to the market generally," which may constitute public

impact under the CCPA.  *See, e.g.*, *Otter Prod., LLC v. Triplenet Pricing Inc.*, No. 19-cv-

00510-RMR-MEH, 2021 WL 5232369, at *7 (D. Colo. Nov. 10, 2021) ("Triplenet's false

statements were directed to the market generally, through its Amazon storefront.  Such

statements are sufficient to establish impact on the public."); *Hall v. Walter*, 969 P.2d

224, 228, 234–3 (Colo. 1998) (misrepresentations implicated the public as consumers

"because the misrepresentations were directed to the market generally").

The only alleged misrepresentations for which plaintiff provides particular allegations are the allegedly misleading trademark applications, which plaintiff alleges defendant FTI submitted on May 9 and 17, 2018 and July 20, 2020.  *See* Docket No. 51 at 8–9, ¶¶ 38–42.  However, plaintiff has not plausibly alleged that the trademark applications had any public impact or "directly affected" consumers, *see Crowe v. Tull*, 126 P.3d 196, 208 (Colo. 2006), as the applications were filed with a government office. *See, e.g.*, *Registry Sys. Int'l, Ltd. v. Hamm*, No. 08-cv-00495-PAB-MJW, 2010 WL 326327, at *16 (D. Colo. Jan. 20, 2010) ("RSI has not explained how such allegedly inaccurate administrative filings fall within the CCPA and its intended goal of 'regulat[ing] commercial activities and practices which, because of their nature, may prove injurious, offensive, or dangerous to the public.'" (quoting *Rhino Linings*, 62 P.3d at 146)).

The Court therefore finds that plaintiff has failed to plead its CCPA claim with particularity pursuant to Rule 9(b).

### D.  Common Law Claims

Defendants argue that plaintiff's common-law claims for unfair competition, fraud, and breach of contract all rely on allegations of trade dress infringement or misappropriation of trade secrets.  Docket No. 55 at 12.  Because defendants believe that plaintiff has failed to plead trade dress infringement or misappropriation of trade secrets, defendants argue that the portions of plaintiff's common law claims that rely on those allegations must be dismissed.  *Id.*  Defendants do not differentiate between

plaintiff's claims or provide additional argument.  The Court finds defendants'

arguments insufficient for that reason.[5]  The Court will, therefore, deny defendants'

motion to dismiss plaintiff's common law claims for unfair competition, fraud, and

breach of contract.

Moreover, the Court agrees with plaintiff that these claims are based on more

than just its trade dress infringement and misappropriation of trade secrets allegations.

First, plaintiff's common law unfair competition claim alleges that defendants have used

the Hauschild and SPEEDMIXER names on their website and machines, which has

allegedly deceived or confused the public regarding the origin of the mixers.  Docket

No. 51 at 25, ¶¶ 134–36.  In its fraud claim, plaintiff alleges conduct relating to the

Termination Agreement, defendants' patent applications, and defendants'

representation regarding its use of plaintiff's confidential information.  *See id.* at 29–31,

¶¶ 160–170.  Finally, in its breach of contract claim, plaintiff's allegations concern

defendants' conduct regarding the Distribution Agreement, defendants' agreement to

pay certain amounts to plaintiff, and not to use certain confidential information.  *See id.*

at 32, ¶¶ 175–80.  Because defendants have not shown that plaintiff's common law

claims should be dismissed, the Court will deny defendants' motion.

## IV.  CONCLUSION

For the foregoing reasons, it is

---

[5]  The Court's practice standards require that, "[f]or each claim for relief that the movant seeks to have dismissed, [the movant shall] clearly enumerate each element **that the movant contends must be alleged, but was not**."  Practice Standards (Civil cases), Chief Judge Philip A. Brimmer, § III.F.2.a.i.  Defendants have not done so. Instead, defendants want the Court to consider whether plaintiff's claims survive after certain allegations are discounted without identifying the allegations.

**ORDERED** that Defendants' Partial Motion to Dismiss Plaintiff's Second Amended Complaint [Docket No. 55] is **GRANTED in part** and **DENIED in part**.  It is further

**ORDERED** that plaintiff's fourth, ninth, and fourteenth claims for relief, for trade dress infringement, misappropriation of trade secrets, and violation of the Colorado Consumer Protection Act, are **DISMISSED**.

DATED February 9, 2022.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge